## COMMONWEALTH *vs.* WILLIAM WYMAN.

The provision, in the Rev. Sts. *c.* 126, § 27, for the punishment of embezzlement committed by any cashier "or other officer" of a bank, includes embezzlement committed by the president and directors of a bank.

The officers of banks are not included in the Rev. Sts. *c.* 133, § 10, which provide, that in the prosecution of the offence of embezzling the money, &c. of any person, by his clerk, servant, or agent, it shall be sufficient to allege generally, in the indict ment, an embezzlement of money to a certain amount, and to give evidence, on the trial, of any such embezzlement committed within six months next after the time stated in the indictment.

An indictment against an officer of a bank, for embezzling property belonging to or deposited in the bank, must charge a specific act of fraud, and the defendant must be proved guilty of the specific offence charged; and not more than one offence can be well alleged in one count of the indictment.

HUBBARD, J. The indictment in this case charges, that William Wyman and Thomas Brown jr. at Charlestown, " on the first day of April 1842, he the said Wyman then and there being one of the directors and president of the Phœnix Bank, a corporation then and there duly and legally established, organized, and existing under and by virtue of the laws of the Commonwealth, as an incorporated bank, and he the said Brown being then and there cashier of the said bank, *did, by virtue of their said respective offices and employments,* and whilst they the said Wyman and Brown were severally employed in their said *respective offices, have, receive, and take into their possession, certain money to a large amount,* to wit, to the amount and sum of $220,000, and of the value of $220,000, divers bills, called bank bills, amounting in the whole to the sum of $120,000, and of the value of $120,000, divers notes, called treasury notes, amounting in the whole to the sum of $75,000, and of the value of $75,000, of the goods and chattels, property and moneys, of them the said President, Directors and Company of the Phœnix Bank, in their banking house there situate, being ; and the said money, bills and notes, then and there, *unlawfully, fraudulently,* and *feloniously,* did embezzle, in *the banking house aforesaid* . And so the jurors aforesaid, on their oath aforesaid, do say that the said Wyman and Brown, then and there, in manner and form aforesaid, the aforesaid money, bills, and notes,

of the goods, chattels, property, and moneys of the said Presi-
dent, Directors and Company of the Phœnix Bank, feloniously
did steal, take, and carry away, in the banking house aforesaid,
against the peace of the Commonwealth aforesaid, and contrary
to the form of the statute in such case made and provided."

This indictment came on to be tried in the court of common
pleas, at the June term 1843, when the defendants severally
pleaded not guilty, and the said Brown was acquitted ; but the
jury disagreed as to the said Wyman, and they were, by con-
sent of the prosecuting officer and said Wyman, discharged.
At the next October term the cause again came on for trial,
before *Allen,* J., and on the opening of the case, the counsel for
the government stated that the defendant was the president of
the Phœnix Bank, and, as such officer, had control and custody
of the property of the bank ; that on the 1st of October 1842,
it was ascertained that the whole capital of the bank, $300,000,
was lost ; the bank, until that time, being in good credit, its
directors, as well as the public, supposing it to be good and its
capital entire ; that, at some time or times unknown, but within
six months after the day stated in the indictment, the capital of
the bank was embezzled by the defendant.

Upon this statement of the case, the counsel for the defend-
ant moved the court to rule that, by law, the government was
restrained to the proof of some one single and distinct act of
embezzlement, as a substantive offence, committed within six
months from and after the day stated in the indictment; and
that no other distinct act of embezzlement could be proved,
except for collateral purposes; as for showing the intent with
which such single substantive act was committed, or the like.
But the court ruled, that the government might prove any acts
of embezzlement committed within six months next after the
day named in the indictment, and permitted the counsel for the
government to give evidence of the abstraction, within said
period of six months, of a large amount of promissory notes,
money, and treasury notes, without proof that the same were
taken from the bank, or abstracted, at the same time. And
evidence was given upon the said trial, among other things,

tending to show that the defendant had authority to lend money of the bank, without consulting the directors; and also evidence tending to show that the defendant had lent the property, mentioned in the indictment, to Stanley, Reed & Co.

After the evidence was closed, the counsel for the defendant, among other things, moved the court to instruct the jury that, to support the indictment, the government must prove, to the satisfaction of the jury, one or more distinct acts of embezzlement committed within six months from ·and after the day charged in the indictment; and that it was not sufficient to prove that within that period uncertain sums, at uncertain times, had been embezzled, although the aggregate of the same might be a sum certain. But the court refused to instruct the jury according to the prayer of said motion. And in regard to the legal character and meaning of the crime of embezzlement, the court instructed the jury that it consisted in the fraudulent conversion by the defendant, to his own use, of the property of the bank described in the indictment; but that it was not necessary to his conviction, that the jury should be satisfied that it was appropriated to his own pecuniary advantage and benefit; and that it was equally an act of embezzlement, if the motive for the fraudulent conversion was to benefit another person.

The jury returned a verdict of guilty against the defendant, and the counsel excepted to the ruling of the court.

The defendant has also moved in arrest of judgment, in this court, and has set out certain reasons therefor, which do not vary substantially from the exceptions taken to the ruling in the court below, with this additional reason, that the indictment does not so describe the office and capacity in which the defendant is therein alleged to have received and taken the things therein charged to have been embezzled by him, that by law any judgment can be rendered thereon against the defendant.

This indictment is founded on the Rev. Sts. *c.* 126, § 27, and *c.* 133, § 10. To sustain, therefore, the rulings of the earned judge who tried the case, it is necessary to maintain that presidents and directors of banks are included under the term *officers,* in *c.* 126, § 27, and that bank officers are among

the persons subjected to be charged with embezzlement, in the mode pointed out in *c.* 133, § 10 ; and unless these two propositions are decided affimatively, it is not necessary to determine the other questions which have been discussed on the argument.

The terms of § 27, of *c.* 126, are these :  " If any cashier, *or other officer*, agent or servant, of any incorporated bank, shall embezzle or fraudulently convert to his own use," &c. ; and the question for consideration is, whether the *president* and *directors of a bank* are embraced within the intent and meaning of the word *officer*, and, as such, are persons obnoxious to the penalties therein imposed.

It is one of the incidents of an aggregate corporation, author ized to make by-laws, to delegate their authority to a part of their body.   And the body to whom such authority is delegated become the efficient representatives of the corporation.   In respect to the banks in this Commonwealth, they have all had, from the creation of the Massachusetts Bank in 1784, to the present time, a board of directors selected from among themselves, one of whom has been constituted their president.   These persons, as indicated by the name, have a directing and supervising power over the affairs of the institutions, rather than the active management of their internal concerns, which are usually entrusted to officers by them appointed, and designated as cashiers, tellers, book-keepers, clerks, messengers and porters. These, thus enumerated, are the regular officers and servants of the banking house; but the president and directors are also the higher officers of the institution.   They control and employ the funds of the bank, and, in the discharge of the duties of such employment, they are made personally liable for official mismanagement.   In an enlarged sense, and in relation to the civil character of the corporation, the president and directors of a bank are its highest officers.   But notwithstanding this, are they designated as officers, specially intended to be embraced in the Rev. Sts. *c.* 126, § 27, as officers subject to the penalties therein prescribed ?

The act incorporating the Massachusetts Bank passed February 7th 1784, (*St.* 1783, *c.* 25,) and during the same session,

March 16th 1784, an act was passed to prevent frauds on the Massachusetts Bank. *St.* 1783, *c.* 53. By this act it was thus provided : " If any *president, director,* officer or servant of the Massachusetts Bank shall secrete, embezzle, or convert to his own use any note, bill," &c. " belonging to the said bank, or deposited there by any other person, every person so offending, and being thereof convicted, shall be " punished, &c. It is obvious, from this act, that the legislature thought the president and directors were exposed to the commission of the crime of embezzlement, and being so exposed, they did not mean to free them from its penalties. And although the terms *president* and *director* are used, as well as *officer,* they do not mean, we think, to designate persons *other than officers,* but rather as the chief of a class, consisting of a number to whom different duties, under different names, might be assigned. And this, we think is obvious from the provisions of the act establishing the Massachusetts Bank, § 4, which enacts, " that for the well governing of the said corporation, and the ordering their affairs, they shall have such officers as they shall hereafter direct and appoint," &c. ; by force of which, their president and directors were appointed as a part of such officers. No other act, it is believed, was made especially to punish frauds committed by officers of banks, until January 29th 1825, (*St.* 1824, *c.* 51,) when an act for that purpose was passed, extending to all banks, and expressly repealing the act of 1783, *c.* 53, and enacting, " that any *cashier,* or other officer or servant of any bank, who shall embezzle or fraudulently convert to his own use any money, note, bill," &c. " shall be deemed, in so doing, to have committed the crime of larceny, and shall be punished," &c. The provisions of this statute were incorporated into the 26th section of the " act to regulate banks and banking," passed February 28th 1829, (*St.* 1828, *c.* 96,) with this variation, viz. that the words *president* and *director* precede that of cashier ; so that it reads, (§ 26,) " that any *president, director,* cashier, or other officer or servant of any bank," &c. And thus the law remained, until the passage of the revised statutes, *c.* 126, § 27, when the words *president* and *director* are again omitted, and the word

*agent* is introduced for the first time. The section runs thus " If any cashier or other officer, agent, or servant of any incorporated bank, shall embezzle, or fraudulently convert to his own use," &c. Whether any difference was intended by the legis· lature between the two acts of 1828, *c.* 96, § 26, and 1824, *c.* 51, we are not called upon to decide, although we strongly incline to the opinion, that, in the variation of the phraseology of these statutes, there was no intent to vary the subjects upon which it was to act ; because we think the revised statutes are to receive the same construction with the statute of 1824, *c.* 51, of which it is an express revision, and in the same language, with the addition of the word *agent,* and a modification in the terms of punishment.

Prior to the act of 1824, *c.* 51, there was no general act relating to frauds upon banks. At that time, such an act was passed, and its object was avowed by its title, " an act to prevent and punish frauds upon banks," to guard against the embezzlement and the fraudulent secreting of the moneys, notes, and effects of banks, and in their possession, or belonging to persons and deposited therein. And against whom was the act intended thus to guard the property of a bank and its depositors, but against those whose connexion with the bank was such that they were either entitled to the custody of the property, or by their situations were brought in continual contact with it ? Against those peculiarly exposed to the temptation, and over whom, therefore, a strong arm was to be held ; and this would necessarily include all its officers, from the highest to the lowest. The terms of the act were, " that any cashier, or other officer or servant of any bank, who shall embezzle or fraudulently convert to his own use," &c. Who are officers of the institution? Who but its president and directors, as well as its tellers, and book-keepers, and discount clerks ; all who have an oversight, management, care or trust of a permanent character, within its walls? The word " officer " here used is, *ex vi termini,* sufficient to, and does, by necessary implication, include the president and directors of the bank. Their names indeed are not inserted, as in the act to prevent frauds against the Massachusetts Bank, but they are

persons, from their confidential intercourse with inferior officers appointed by them, from their access to the various parts of the banking house, and from their ability to direct the disposition of its funds, in a situation to commit the offences intended to be prevented.  Being within the mischief, they are intended to be reached by the remedy.  To argue that they are not included within the terms of the act, from the circumstance that they are not specifically named, would be in fact to argue that the president and directors of the Massachusetts Bank are now, for the first time, to be exempted from the operation of the act, though all its other officers are still embraced within it, without the slightest reason given for such exemption.  The cashier also was a person not named in the first act.  Yet it surely cannot be contended that he was not embraced under the term "officer," and as such liable to punishment in case of embezzlement.  In this act he is named, because he was found by experience to be the chief depositary of the funds and valuable papers of the institution, and to retain them under his peculiar lock and key ; while the terms " president, director," are dropped ; it not being intended to enumerate the various officers of the institution, but under the words " other officer " to embrace them all within its purview.  This construction of the several statutes gives consistency and harmony to them all ; otherwise, a strange vacillation of policy, in regard to the presidents and directors of banks, must be fastened upon the legislature.  In regard to the word " agent," used in the revised statutes, we think it was introduced to embrace a class of persons often employed in the management or transmission of the funds of a bank, but not included among its officers.

We are therefore of opinion, that the term " officer," as used in the Rev. Sts. *c.* 126, $\S$ 27, is of that comprehensive character, as to include within its embrace, not only the officers in rank under the cashier, but the superior officers also; and that presidents and directors, being officers of banks, and as such within the mischief intended to be prevented, are also within its remedies, and that where they are properly charged as entrusted with the property of the bank, or of its depositors, they may, on

proof of their guilt, be punished for the crime of embezzlement, and not merely of a simple larceny.

The next question for examination is, whether § 10 of c. 133 includes within its provisions bank officers, as among the persons subjected to be charged with embezzlement in the mode therein pointed out. That section is as follows: " In any prosecution for the offence of embezzling the money, bank notes," &c. " of any person, by a clerk, agent, or servant of such person, it shall be sufficient to allege generally, in the indictment, an embezzlement of money to a certain amount, without specifying any particulars of such embezzlement, and on the trial, evidence may be given of any such embezzlement, committed within six months next after the time stated in the indictment; and it shall be sufficient to maintain the charge in the indictment, and shall not be deemed a variance, if it shall be proved that any money, bank note," &c. " of such person, of whatever amount, was fraudulently embezzled by such clerk, agent, or servant, within the said period of six months." The inquiry that arises on this section is of great importance, because, if bank officers are not included, then a bank officer, when accused of embezzlement, must be charged with a specific act of fraud, as in larceny at common law, and be proved guilty of the specific offence charged; and not more than one offence can be alleged in one count of the indictment. But if they are included in the provision, then a general allegation of the embezzlement of money may be made to a certain amount, without specifying any particulars, and evidence of any such embezzlement, committed within six months next after the time stated in the indictment, may be given on the trial, and it will be deemed sufficient to maintain the charge, if any money, &c. of whatever amount, has been embezzled within the six months.

All statutes are to receive a reasonable construction; and the language used in them, where it is not professedly technical, is to be taken in its ordinary acceptation in the community; so that all may understand its meaning and intent. But it has ever been held, in this Commonwealth, as a fundamental principle of construction, that penal statutes, affecting the life,

liberty, good name and property of the citizen, shall be construed strictly, according to the clear design of the makers, to be especially ascertained from the terms made use of; and that where such terms are clear and unambiguous, they are not to be departed from nor enlarged by any intendment derived from any other source ; but that where the language used is ambiguous or general, and is fairly susceptible of more than one construction, then recourse is to be had to the design of the makers, to the abuses to be remedied, and to preceding statutes, if any, in respect to the same offences ; still that they are not to be so construed as to multiply offences, nor to enlarge, by mere implication, the classes of offenders.

In the case before us, the language of § 10 of *c.* 133 of the revised statutes is not so definite and precise, as to contain within itself a meaning free from ambiguity ; but we are necessarily required, in order to understand its meaning and limitations, to trace its origin, in order to ascertain the design of the revisers of the statutes.

Before tracing the history of this section, I will consider, for a moment, the course probably adopted in the revision of the statutes.   The duty of the commissioners was stated in the resolve under which they were appointed.   That duty was, " to revise, collate, and arrange, as well the colonial and provincial statutes as all other the general statutes of the Commonwealth, which are or may be in force at the time such commissioners may finally report their doings ; to collate and arrange them under chapters, titles, and sections, and also to suggest such contradictions, omissions or imperfections, as may appear in the laws so revised, and the mode in which the same may be reconciled, supplied, or amended."   The work was necessarily divided among the commissioners; and in the performance of their arduous and responsible duty, they were, undoubtedly, constantly restrained by the apprehension, that if they made many alterations, and gave the work the form and character of a code, or uniform system of laws, their labors might all be rejected.   In performing their work, they rather, for the greater part, digested the existing statutes, on kindred subjects,

into separate sections, than embodied them into a single article, or consecutive and connected articles ; and in consequence of it, they were occasionally deficient in giving that symmetrical form to the laws which would have been desirable, and occasionally failed in removing those perplexities and imperfections which a more thorough combination of the statutes into a whole would have enabled them to do. And we feel this to have been especially the case with parts of the statutes relating to crimes.

The provisions in regard to embezzlements are arranged under various titles, according to the character and employment of the party upon whom the offence may be chargeable. And in regard to embezzlement from banks, the several statutes on that subject were digested, and included under § 27 of c. 126, which we have considered. But there was also among our statutes one other distinct act relating to this crime, entitled " an act for the further prevention of fraud and embezzlement," passed April 1st 1834, (St. 1834, c. 186,) which was also revised. This act will be found, on examination, to be, as to its first two sections, an exact transcript of the St. 7 and 8 Geo. IV. c. 29, § 47; which was intended to meet cases which were supposed not to be sufficiently covered by the prior St. 39 Geo. III. c. 85. This statute of 1834 enacts " that if any clerk or servant, or any person employed for the purpose or in the capacity of a clerk or servant, shall, by virtue of such employment, receive or take into his possession any chattel, money, or valuable security, for, or in the name, or on the account of his master, and shall fraudulently embezzle the same," &c. " every such offender shall be deemed to have feloniously stolen the same from his master, although such chattel, money or security was not received into the possession of such master otherwise than by the actual possession of his clerk, servant, or other person so employed." And in the second section, it further provides that " it shall be lawful to charge in the indictment, and proceed against the offender, for any number of distinct acts of embezzlement, not exceeding three, which may have been committed by him against the same master, within the space of six calendar months, from the

first to the last of such acts, without specifying any particular coin or valuable security ; and such allegation, so far as regards the description of the property, shall be sustained, if the offender shall be proved to have embezzled any amount, although the particular species, &c. shall not be proved." There is also a 3d section, which makes any person, not included in those provisions, who, being entrusted by another with property, embezzles the same, &c. to be deemed, in so doing, to have feloniously stolen the same, and to be punishable as in other cases of larceny.   The first of these sections is revised and embraced in § 29 of c. 126, and the second section, as to the mode of prosecution, is revised and embraced in § 10 of c. 133.   And the question now presented for consideration is, whether bank officers are included within the purview and intent of these two sections.

The provisions of St. 1834, c. 186, have no relation to bank officers ; but whether they apply to the clerks, servants, or agents of other corporations, is a question which has not arisen in this Commonwealth, nor are we now called upon to decide it. In the revision of the first section, the revisers extended its provisions so as to include officers, agents, clerks, or servants of any incorporated company, and clerks, &c. of copartnerships, excepting apprentices and others under sixteen years of age ; and they extended the third section to carriers, as well as other persons.   On the first view, it might be thought that officers of incorporated companies would of course include banks. . But this is clearly negatived by the fact, that the preceding 27th section is expressly and solely applied to bank officers, for similar crimes which may be committed by them, in their offices; and this section, therefore, must be intended to apply to incorporated companies other than banks.   Otherwise, it would be but a feeble repetition of what had been previously distinctly enforced.   The commissioners, however, in their notes to this and the next section, (the 29th and 30th, of c. 126,) remark, that "some slight alterations from the statute of 1834, c. 186, are proposed in these sections.   The substance of the general provisions in the 3d section is introduced, among ʰe other provisions of a like

22 *

nature, in chapter 133." These slight alterations are the provisions with regard to incorporated companies, &c. and were suggested by the fact of the number of manufacturing corporations in the Commonwealth, employing officers, agents and servants, or from a reference to *St.* 39 Geo. III. *c.* 85, which contains a like provision. Sections 29 and 30, then, are not a revision of the statutes to prevent frauds upon banks, but of the *St.* of 1834, *c.* 186.

We now proceed to chapter 133, which is referred to in the foregoing note of the commissioners; and we find that § 10 is the only one relating to that class of offences to which §§ 29 and 30 of *c.* 126 apply. This § 10 is in fact (and as it is stated by the revisers to be) a revision of § 2 of *St.* 1834, *c.* 186; and its alterations are these; namely, it adds, in the original draft, the word "corporation," to correspond with the words "incorporated company," as introduced into § 29 of *c.* 126, and instead of making it lawful to proceed against the offender for any number of distinct acts of embezzlement, not exceeding three, it provides, in lieu thereof, that it shall be sufficient to allege generally, in the indictment, an embezzlement of money to a certain amount, without specifying any particulars of such embezzlement, and on the trial, that evidence may be given of any such embezzlement committed within six months next after the time stated in the indictment. These alterations, then, are still alterations of the *St.* of 1834. No mention is made of bank officers, nor any allusion to the mode of prosecuting offences committed by them. No intention is intimated of making any change in regard to them; and the punishment may be greater. The law of 1834, and the mode of prosecuting under it, had no connexion with, nor bearing upon, bank officers. It was a law copied from the English statutes just enacted, and had received no judicial construction, and could hardly be said to have gone into active operation.

Upon a review of all the statutes, and a careful and anxious examination of all their provisions, we are clearly of opinion that the 10th section of the 133d chapter was not intended to refer to bank officers, and that it does not relate to nor include them within its provisions.

We do not overlook the fact, that the legislature, in passing the 10th section of chapter 133, struck out the word " corporation," which the revisers had inserted. But it becomes unnecessary for us to decide whether the legislature, in so doing, intended to confine the mode of charging offences committed by officers of corporations as it stood at common law, or whether they considered the word *person*, used in the section, as embracing corporations, and so struck it out as superfluous    Nor is it necessary now to determine whether any number of acts of embezzlement may be proved under an indictment properly framed upon § 10 of *c.* 133, or whether the government is confined to the proof of a distinct act of embezzlement, in the same manner as larceny is to be charged and proved at common law.

We are of opinion that § 10 of *c.* 133 does not include bank officers within its purview and meaning, and therefore that the ruling of the learned judge, in admitting evidence, under this indictment, of several acts of embezzlement, cannot be sustained.

The court are also of opinion, that even if the Rev. Sts. *c.* 133, § 10, did embrace within its provisions offences committed by officers of banks, as specified in *c.* 126, § 27, still the language and terms made use of in said § 10 are such, that if the person charged be other than a clerk or servant of the bank, he must be indicted as an agent of the bank, and, as such agent, averred to be entrusted with its funds, or of those of other persons deposited therein ; and that such agency must be specially proved, before evidence of embezzlement, in the manner stated in that section, can be admitted against him. To sustain this verdict, it would be necessary to hold that the word " agent," *ex vi termini*, included within its meaning the terms " president " and " director " of a bank. Such a construction would not only violate the well known rule in regard to penal statutes, but would in truth be giving to the clause a broad and enlarged meaning, and apparently for the purpose of multiplying the classes of offenders to whom it should be extended.

In regard to the motion in arrest of judgment, as we grant the motion for a new trial, it is not necessary to make any determination in relation to it.

The officers of banks, therefore, are to be proceeded against in the same manner as before the revised statutes existed ; and it is for the officer of the government to determine, in regard to the character of this indictment, whether the same can be sustained, and as to the manner in which an agency on the part of the president, as to the custody of the funds of the bank, can be proved, if it existed, and whether he can prove a distinct act of embezzlement committed by the defendant; and for this purpose, the exceptions being sustained, the verdict is set aside, and the cause is remanded to the court of common pleas for further proceedings.

*Webster & Dexter*, for the defendant.

*Huntington*, (District Attorney,) for the Commonwealth.