COMMAGER V. DICKS.

*[Opinion Filed Feb. 1, 1892.]*

1. PUBLIC LANDS --*Homestead Entry—Contesting Claimants—Forcible Entry and Detainer.* —Defendant entered' upon public land with the *bona fide* intention of making a homestead thereon, and continued to reside thereon and make improvements. Afterwards, he made application to enter the land, but did not tender or pay the fees required by law; the application being rejected by the land department because in conflict with a prior entry. Subsequently, plaintiff made his homestead entry, paid the fees, and received the usual receipt.   Defendant then instituted in the land department a contest against plaintiff to cancel his entry because of prior settlement, which contest was still pending when plaintiff instituted this action of forcible entry and detainer. *Held*, that the action could not be maintained, as congress has conferred upon the land department the exclusive power to determine all questions as to the sale or transfer of public lands.

*Appeal from the District Court of Logan County, Hon. E. B. Green, Judge.*

Action of forcible entry and detainer by David H. Commager against Charles W. Dicks.   Judgment for plaintiff.   Defendant appeals.   Reversed.

*Morgan & Pancoast*, for appellant.

*Commager & Dodd*, for appellee.

The opinion of the court was delivered by

CLARK, J.: An action was commenced by the plaintiff, David H. Commager, in justice court, June 11, 1890, for the possession of the N. W. ¼ of Sec. 17, Twp. 16, N. of Range 2 W.   The plaintiff recovered in the justice court and the defendant appealed to the district court of the first district, where a jury was waived and the case was tried by the court.

The following are the findings of fact, and conclusions of law filed by the court:

"This cause came on to be heard, and the parties in open court, having waived a jury, was submitted to the

court upon the pleadings and evidence, and the court, upon request of the defendant to state its findings of fact separately from its conclusions of law, and having taken the case under advisement until this day, now, on this 17th day of December, 1890, finds as follows:

"*First:* That on the afternoon of April 22, 1889, the defendant made settlement on the land in question, namely, the N. W. ¼ of Sec. 17, in Twp. 16, N. of Range 2 W., in Logan county, Oklahoma, said lands being government land, subject to entry under the homestead laws.

"*Second:* That the defendant is a native born citizen, over the age of twenty-one years, and settled upon said land with the intention and for the purpose of entering the same as a homestead under the homestead laws.

"*Third:* That the defendant, on the day of settlement, commenced the erection of a house, has since erected the same and made other valuable improvements, and has continuously resided on the land up to this day.

"*Fourth:* That on the 23d day of April, 1889, O. B. Dicks, a brother of the defendant, also made settlement upon the said tract of land; thereafter he erected a house, made other valuable improvements, and has continuously resided thereon.

"*Fifth:* On the 24th day of April, 1889, the plaintiff, through his agent, filed a soldier's declaratory statement upon the same land at the land office at Guthrie, Oklahoma Territory.

"*Sixth:* About the first of June, one Linehan made a homestead entry on the same piece of land, subject to the plaintiff's soldier's declaratory statement.

"*Seventh:* On the 6th day of June the defendant instituted a contest in the land office at Guthrie against Linehan to cancel his, Linehan's entry, alleging settlement April 22, 1889.

"*Eighth:* On July 2d, said O. B. Dicks also instituted a contest against said Linehan, and on the 5th day' of July, one Pierce instituted a contest against Linehan to cancel his entry.

"*Nineth:* On October 12, 1889, within six months, the plaintiff, Commager, commuted his declaratory

statement to a homestead entry, at which time he paid the fees required by law and procured the usual dupli-cate receipt and entered into possession of the land so far as he could under the circumstances, and has made valuable and lasting improvements thereon by building a dwelling house in which he resides with his family.

"*Tenth:* That the plaintiff had notice of the defen-dant's settlement and residence on the land prior to the time he filed his homestead entry.

"*El:venth:* On November 2d, O. B. Dicks instituted a contest against the plaintiff, and on November 9th the defendant instituted a contest against the plaintiff to cancel his entry on said land, alleging prior settlement. This is the condition of the record up to April 19th, when the homestead entry of Linehan was relinquished to the United States. July 17. 1890, the defendant made application to enter at the land office but did not pay or tender the fees required by law. His application was rejected because in conflict with the homestead entry of the plaintiff Commager (Linehan). No appeal was taken. No trial or hearing has been had in either of the above mentioned contest cases, and they still remain up to this time, untried and unadjudicated by the land department.

"*Twelfth:* At the date which the plaintiff made his settlement on the tract, the defendant had thereon in the way of improvements, a log house, a stable, one acre broken and in crop, and about ninety rods of post and wire fence. The fence was joined to the fence built by Welsford, on the west line of this tract, and was so constructed that by running to Cottonwood creek that it practically enclosed most of the quarter section and made an enclosure in one field of about fifteen acres. The defendant now has an enclosure, in addi-tion to the above, of about one acre immediately sur-rounding his house and stable.

"*Thirteenth:* That more than three days before the commencement of the action of forcible detainer, the plaintiff served upon the defendant a written demand for possession of the premises in controversy as required by the Nebraska statutes in such cases provided, and

the defendant refused to surrender such possession to the plaintiff."

### CONCLUSIONS OF LAW.

That the plaintiff Commager, by virtue of his homestead entry and receiver's duplicate receipt, is entitled to the possession of the land in controversy, as against the defendant, Charles W. Dicks, who, though a prior settler on said land, did not, within three months after the date of his settlement, file or attempt to file, his homestead application and perfect his original entry in the United States land office and pay, or tender the fees, as required by the act of Congress approved May 14, 1880.

That the defendant, Charles W. Dicks, being a settler upon or occupier of the land described in the complaint, without color of title, and the complainant, the plaintiff Commager, having the right of possession, the plaintiff is entitled to recover possession of said land in this action of forcible detainer.

And upon said findings of fact and conclusions of law, judgment was entered in favor of said plaintiff, Commager, and against said defendant, Dicks, for the possession of said real estate and for the costs of said action; from which judgment the defendant appealed to this court.

In brief, it appears that the defendant Dicks, a legal settler, entered upon said land April 22, 1889, and commenced that day to make, and did make, valuable improvements thereon, and has continuously resided thereon since that day.

That on the 24th day of April, 1889, the plaintiff filed his soldier's declaratory statement thereon, through his agent, and that he had notice of defendant's settlement thereon prior to the filing of said declaratory statement.

That June 1, 1889, one Linehan made a homestead entry on the said tract of land;

Commager v. Dicks.

That on June 6, 1889, the defendant instituted a contest to cancel Linehan's entry, alleging settlement April 22, 1889.

That July 17th, the defendant made application to enter the land in question; but did not tender or pay the fees required by law, which application was rejected because in conflict with a prior entry, and from which rejection no appeal was taken.

That on October 12, 1889, the plaintiff commuted his declaratory statement to a homestead entry, paid the legal fees, procured the usual receipt, entered into possession of the land as far as he could, and has made improvements thereon and resided thereon with his family.

That on November 9, 1889, the defendant instituted a contest against the plaintiff to cancel his entry on said land, because of prior settlement.

That at the time the plaintiff made his settlement on said land in October, 1889, the defendant had a house and stable thereon, one acre in crop, and about ninety rods of post and wire fence, which with a neighbor's, to which it joined, and Cottonwood creek, practically enclosed most of the quarter section, and in one field about fifteen acres, and has since enclosed his house and stable with a fence.

That no trial has been had in the land office in the above mentioned contest, and that it has not been adjudicated by the land department.

Under the above state of facts, had the court jurisdiction of the subject matter? And if answered in the affirmative, should the plaintiff have had judgment for the possession of the said quarter section?

The court found that the defendant was the first person to enter upon said lands, and did so prior to the filing of even a declaratory statement thereon and with the *bona fide* intention of making a homestead thereon,

and has, since the day of settlement, resided thereon and improved the same. He did not then go thereon as the tenant of the plaintiff nor as the tenant of any other person. Nor did he break into the premises or enclosure of any other person, but peaceably and lawfully settled thereon, and now claims it as a prior settler.

That the plaintiff went on said premises at a later date and obtained the duplicate receipt from the land office; and that the contest for said premises, between said parties, is pending in the land office.

The court cannot, in this proceeding, determine the ultimate rights of the parties to the land. Congress has conferred upon the land department the express power to hear and determine all questions appertaining to the sale or transfer of the public domain to private individuals. That right and power is exclusively vested in that tribunal. Any interference by the courts would lead to confusion and conflict between the departments of the government and would be productive of mischief. It might happen that the court would award the land to one person and the land department vest the title in another.

It may be said that the court is not asked to determine the ultimate rights of the parties to the land; but only the question of temporary possession.

To do that, must not the court determine in advance of the decision of the land office whether these parties, or either of them, have complied with the laws of the United States and thus in advance determine the right to said premises?

If the land office has exclusive jurisdiction to pass upon the questions of the rights of the parties, and the contest is pending therein between *bona fide* settlers, upon the same tract of land, why should the courts step in and say to one, you have not complied with the land

laws as the court construes it, in this, that or the other particular, and you must surrender possession?

The rights of the homestead and pre-emption claimants must be the same and adjudicated by the same procedure. The contests are conducted in the same manner. The rules applicable to one are applicable to the other. In the great majority of contests over rights to homesteads, we find that there are two or more contestants, in the actual occupancy of portions of the same quarter section.

The law contemplates the right of more than one person to settle upon and claim the same quarter section.

Section 2273 of the revised statutes of the United States is as follows:

"When two or more persons settle on the same tract of land, the right of pre-emption shall be in him who made the first settlement, provided such person conform to the other provisions of the law; and all questions as to the right of pre-emption arising between different settlers shall be determined by the register and receiver within the district within which the land is situated."

Thus we see a number of persons may reside on the same tract without being trespassers one upon another's premises. In *Atherton v. Fowler*, 96 U. S. 513 (Bok. 24 P 733 L. Ed.) Justice Miller said:

"Undoubtedly there has been and may be cases against where two persons making settlement on different parts of the same quarter section of land may present conflicting claims to the right of pre-emption of the whole quarter section and neither of them be a trespasser upon the premises of the other for the reason that the quarter section is open and unenclosed and neither party interferes with the actual possession of the other. In such case the latter of the two may be *bona fide* for many reasons, The first party may not have the qualifications necessary to a pre-emption, or he may have pre-empted other land or he may have permitted the time for filing his declaration to elapse, in which case the statutes expressly declares that another person may

become pre-emptor; or it may not be known that the settlements are on the same quarter.

"Does the policy of the pre-emption law authorize a stranger to thrust these men out of their houses, seize their improvements and settle exactly where they were settled and by these acts acquire initiatory right of pre-emption?

"The generosity by which Congress gave the settlers the right of pre-emption was not intended to give him the benefit of another man's labor, and authorize him to turn that man and his family out of their house.

"It did not propose to give its bounty to settlements obtained by residence at the expense of others. The right to make a settlement was to be exercised on un-settled land; to make improvements on unimproved land. To erect a dwelling house did not mean to seize some other man's dwelling. It had reference to vacant land, to unimproved land, and it would have shocked the moral sense of the men who passed these laws, if they had supposed that they had extended an invitation to the pioneer population to acquire inchoate rights to the public lands by trespass, by robbery, by acts leading to homicide and other crimes of less moral turpitude,"

In the case at bar, the defendant was lawfully and peaceably in possession of the premises, two days before the plaintiff filed his declaratory statement and had been residing thereon and making valuable improvements for nearly six months before the plaintiff attempted to occupy any portion of said premises, and now we are asked, through the forms of the law, to oust the prior settler because the plaintiff holds a receiver's receipt for the fees paid on the land, wherein the homestead entry was made; and because the defendant did not at the time of his application to enter the land, tender the usual fee, notwithstanding the fact that it was rejected because in conflict with a prior homestead entry, and turn the defendant out of doors and put the plaintiff in possession of the premises and improvements made by the defendant.

It is not necessary to enter into an analysis of the land laws; the question of jurisdiction over such matters was thoroughly discussed in the case of *Adams v. Corch,* 26th Pac. Rep., p 1009, and the effect of a receiver's receipt, such as the plaintiff holds.

It was there in substance held that the receivers. receipt, contemplated by § 411 of the Nebraska statutes, was the receipt given where the land was subject to private entry and where the full price was paid and there was nothing else to do, and not to pre-emption and homestead entries, where proof had to be filed, after residence and improvements, that he had complied with all the provisions of the statutes before he could receive a patent.

The land office in 1888 held that an application for homestead entry having been rejected, on the ground that the land was excluded from entry by the preference right of another, the tender of fees and commissions would have been an idle formality. (7th Land decision, p 186.) How it will hold now is a question. for the department and not for the courts.

And whether the filing of a contest against Linehan in July, 1889, and afterwards the filing of a contest against the plaintiff in November, 1889, protect the defendant's claim from forfeiture or not, are questions. for the land department to first pass upon and not for the courts.

But it is unnecessary to discuss these questions further and pass upon any of these legal propositions, enough appearing to show that the matter was pending in the land office, and that it was entertaining jurisdiction.

It appearing that the defendant's entry upon said land was lawful and peaceable, and with the *bona fide* intention of making a homestead thereon; and it further appearing that at the time this action was commenced,

the claims of the parties thereto to said premises were being waged in the land department, the court should not have entertained jurisdiction; but should have dismissed said cause at the cost of the plaintiff.

The judgment of the district court is reversed, with costs, and the cause is remanded with direction to dismiss said action at the cost of the plaintiff.

All the Justices concurring.