[Civ. No. 21555.   Second Dist., Div. One.   Oct. 23, 1956.]

JOHN C. O'STEEN et al., Appellants, v. ALYS S. CRAIG, Respondent.

Culver Van Buren for Appellants.

John J. Bradley for Respondent.

FOURT, J.—This is an appeal by the plaintiffs from an order granting the motion of defendant Alys S. Craig to vacate an attachment levied upon certain of her real property. The motion was made upon the ground that the note sued upon was neither made nor was it payable in the State of California.

It appears from the record that on or about July 31, 1954, plaintiffs and defendants entered into a contract of sale wherein plaintiffs agreed to sell and defendants agreed to buy the Farris Hotel and Casino in Winnemucca, Nevada, for a consideration of $85,000. The agreement, made and entered into in Winnemucca, set forth that "Charles C. Breckenridge, of the County of Los Angeles State of California, and Alys Craig, of the County of Los Angeles State of California," would be referred to as the buyers, and further provided for the execution of certain promissory notes to evidence the

payments to be made. On July 31, 1954, a promissory note in the sum of $20,000 was executed by Alys Craig, the respondent herein, in favor of O'Steen and Blair, as a part of the transaction and apparently pursuant to the agreement, which note reads in part as follows:

". . . As hereinafter agreed, after date, for value received, I promise to pay to John C. O'Steen and Leland B. Blair, or order at Winnemucca, Nevada, or wherever payment may be demanded by the holder hereof, within or without the State of Nevada, the sum of Twenty Thousand ($20,000.00), in lawful money of the United States of America, at five (5) per cent rate of interest from date until paid. . . ."

The note was not paid on the due date and demand was made of the maker that she pay the same at the office of the attorney for the plaintiffs in Burbank, California.

Affidavits were filed by the appellants and respondent. Appellants stated in substance in their affidavits that the defendants were at all times residents of the county of Los Angeles; that respondent Alys Craig did, on or about September 1, 1954, in her home in Van Nuys, California, give to O'Steen her check in the sum of $5,000, drawn on a California bank, pursuant to the terms of the agreement. These statements were not denied by the respondent.

The sole question involved is whether the trial court was correct in discharging that portion of the attachment which was based upon the promissory note referred to.

Section 537, Code of Civil Procedure, provides in part as follows:

"The plaintiff, at the time of issuing the summons, or at any time afterward, may have the property of the defendant attached, as security for the satisfaction of any judgment that may be recovered, unless the defendant gives security to pay such judgment, as in this chapter provided, in the following cases:

"1. [*Unsecured claims on contract.*] In an action upon a contract, express or implied, for the direct payment of money, *where the contract is made or is payable in this State,* and is not secured by any mortgage, deed of trust or lien upon real or personal property, or any pledge of personal property, or, if originally so secured, such security has, without any act of the plaintiff, or the person to whom the security was given, become valueless; provided, that an action upon any liability, existing under the laws of this State, of a spouse, relative or kindred, for the support, maintenance, care or necessaries

furnished to the other spouse, or other relatives or kindred, shall be deemed to be an action upon an implied contract within the term as used throughout all subdivisions of this section." (Emphasis added.)

We are of the opinion that, under the facts of this case, an attachment should be permitted.

The respondent has placed strong reliance on the cases of *Dulton* v. *Shelton*, 3 Cal. 206; *Eck* v. *Hoffman*, 55 Cal. 501; *Darke* v. *DeWitt*, 1 Cal.App. 617 [82 P. 982] and *Atwood* v. *Little Bonanza etc. Co.*, 13 Cal.App. 594 [110 P. 344], each of which are factually dissimilar to the instant case. In the Dulton case, decided in 1853, the action was brought by the plaintiff, a resident of Boston, Massachusetts, to recover of the defendants, residents of San Francisco, money for goods sold by the plaintiff to the defendants. The evidence was that the defendants had purchased, on several occasions, goods from plaintiff in Boston and had remitted payment to Boston; that no payment had been made to plaintiff in San Francisco, nor demanded of defendants, and the letters of the plaintiff to defendants accompaying the invoices of goods forwarded stated, "funds in payment of the same to be in Boston two-and-a-half months after arrival of vessel." "In future I should prefer remittances, if convenient, being made direct to me." "Cash to be in Boston two-and-a-half months after arrival of vessel." "In no case omit remitting." There was also evidence that one of the partners, defendants, resided in Boston for some time during the relations between the plaintiff and defendants. The plaintiff contended that although the contract was not, by its terms, payable in this state, yet because the defendants resided here, the action was transitory and therefore payable here, and he was entitled to the attachment. The court said (at p. 208) : "We can only follow the rule in this case by denying the right of attachment, except where the contract is made within this State, or if made without it, then accompanied by a stipulation between the parties to it, that the money is to be paid here."

The Eck case was one on several dishonored bills of exchange drawn by one of the defendants upon the other in favor of the plaintiff. At that time all of the parties resided in Germany and the bills were drawn and payable there. After the acceptance and before the maturity of the bills, both defendants left Germany and came to the United States under an assumed name. They then came to California. The affidavit for the attachment did not state that there was any

express stipulation that the bills should be paid in this state. The theory of the plaintiff was that although the bills were drawn at one place in Germany, and payable in the same country, on their dishonor they became payable wherever the defendants might be found. The court, in deciding the case, said at page 502: "That is true in a general sense, but that is not the sense in which the phrase 'is made or is payable in this State' is used in the statute. If a contract is not made in this State, there must be an express stipulation that it shall be paid in this State to authorize the issuance of an attachment in an action upon it."

In *Drake* v. *DeWitt, supra,* the plaintiff brought an action to recover commissions earned under a written contract made in Minnesota. Under the contract Drake took the Saint Paul agency for the sale of certain California lands. As the court said (at page 618): "The contract before us shows on its face that it was made and was to be performed by Drake in the state of Minnesota. There in nothing to indicate that commissions earned were to be paid in California. The stipulations touching monthly reports, and commissions on sales influenced by Drake but consummated here, evince a contrary intention, and the presumption is that payment was due where the contract was made and the services were rendered." The stipulations touching the monthly reports evinced a contrary intention. The court, in deciding the case said (at page 619): "Her right to an attachment in any event depends upon the view that this was a contract for the direct payment of money, and it is essential to such right that the agreement itself contain some provision indicating that such money was payable in this state."

In the Atwood case the action was upon certain negotiable instruments executed by the defendant corporation at Boston, Massachusetts, without definite place of payment therein stated. An attachment issued and a motion was made to dissolve the same upon the ground that the instruments were made in another state and were not payable in this state. Affidavits were presented by the defendant at the hearing of the motion to the effect that the corporation was a foreign company, that the members of the board of directors were all nonresidents of California, and that the notes were executed in Massachusetts. The plaintiffs filed affidavits to the effect that notwithstanding the omission to specify the place of payment, it was understood and agreed, when the notes were delivered, that the same were payable either in Massachusetts

or California. The trial court denied the motion to dissolve. The appellate court reversed the order and said, in determining the case (at pp. 596-597): ''But we are confronted with the construction of such section as applied to attachment proceedings in *Tuller* v. *Arnold*, 93 Cal. 168 [28 P. 864], where it is said: 'The contract, having been made in Illinois, was presumptively to be performed there, and an attachment could not be taken out here, even although it is true in a general sense that the money was payable wherever the defendants could be found. To authorize the issuance of an attachment, the money must have been made payable in this state by the contract itself.' (Citing authorities.) The right to an attachment in any event depends upon the contract being for the direct payment of money, 'and it is essential to such right that the agreement itself contain some provision indicating that such money was payable in this state.' (*Drake* v. *De Witt*, 1 Cal.App. 618 [82 P. 982]; citing in support, *Dulton* v. *Shelton*, 3 Cal. 208; *Eck* v. *Hoffman*, 55 Cal. 502.) Accepting this as the rule, and the terms of the note being admitted, it follows that no evidence was competent which undertook to change or modify the language of the instrument. Whatever may have been the understanding of the parties as to the place of payment, they are concluded by the terms of their written contract and the legal presumptions attaching thereto, whenever they invoke the attachment laws of this state. No conflict arising, therefore, from competent evidence, we are constrained to hold that, as a question of law, the writ of attachment should have been dissolved, and that the court erred in denying such motion.''

In *American Industrial Sales Corp.* v. *Airscope, Inc.*, 44 Cal.2d 393, the court said, at page 400 [282 P.2d 504]: ''It is apparent from the above analysis that the rule of the Atwood case, on which defendant relies, rests upon the misapplication of certain general language in the earlier cases. Neither reason nor settled general principles sustain such rule, and its declaration in the Atwood case, along with any language in the preceding cases which would lend support thereto, must be disapproved. (See also *Snapp* v. *Kidder*, 200 Cal. 724, 725 [255 P. 183].) Adherence to such rule would place an illogical restriction upon the use of parol evidence for the purpose of establishing attachment rights, which restriction does not prevail in fixing the terms of the contract for other purposes. (See *Love* v. *Gulyas*, 87 Cal.App.2d 608, 614 [197 P.2d 405].) The presumption that a contract, silent as to

the place of payment, is payable at the place where the creditor resides is not conclusive, but is rebuttable by competent evidence. Such evidence may relate to a contemporaneous oral agreement which accompanies the execution of the written contract and is wholly consistent with the terms thereof.''

In the case before us, there is clear language that the money is payable (1) in Winnemucca, Nevada, or (2) wherever the holder might demand payment. It is undisputed in the record that a proper demand for payment was made in Los Angeles County that the money be paid to the plaintiffs in Los Angeles County at a specified address. It seems inescapable that the parties contemplated, at the time of the agreement and the execution of the note in question, that payment might well be demanded in California. The respondent was a resident of Los Angeles County, and plaintiffs stated in their affidavits that they too were residents of Los Angeles County. It is further undisputed that the respondent did make some payment on the obligation, brought into being by the agreement, to the plaintiffs in California. This conduct would seem to bear out the contention that the parties contemplated the obligation being paid in California.

In 70 Corpus Juris Secundum, under the article titled ''Payment,'' on pages 217-218, it is set forth:

''As a general rule, in the absence of any agreement or stipulation to the contrary, a debt is payable at the place where the creditor resides, or at his place of business, if he has one, or wherever else he may be found; and ordinarily it is the duty of the debtor to seek the creditor for the purpose of making payment, provided the creditor is within the state of his residence when the payment is due, unless provided otherwise by statute. . . .

''When the place of payment is fixed by agreement, express or implied, payment must be made at the place agreed on unless both parties consent that it be made elsewhere, and the creditor should be present in person or by agent to receive it . Where a debt is payable at either of two or more places, payment must be made wholly in one place or another and not in part at each place.''

In *American Industrial Sales Corp.* v. *Airscope, Inc., supra,* after quoting a part of the above statement, the court said, at page 398: ''But such presumption is rebuttable, not conclusive; and plaintiff produced evidence of the contemporaneous oral agreement to rebut the presumption as to the place of payment which would otherwise prevail in view of the

contract's silence on the subject. There is nothing in the attachment law (Code Civ. Proc., § 537) which would qualify the application of the parol evidence rule in this state for the purpose of establishing the prerequisites for using the attachment process. While the attachment statute must be strictly construed and one seeking to enforce any right thereunder must affirmatively show that the contract agreed upon falls within its terms (5 Cal.Jur.2d § 4, p. 598), still the statute 'must be reasonably and fairly interpreted so as to give [it] an efficient operation, and so as to give effect, if possible, to the expressed intent of the legislature. A statute should never be construed so strictly as to render it absurd or nugatory.' (*Walters* v. *Bank of America,* 9 Cal.2d 46, 52 [69 P.2d 839, 110 A.L.R. 1259].) One of the purposes of attachment is to afford the creditor security for the payment of unsecured debts and to prevent the debtor's sequestration of funds or fraudulent transfer of assets in an attempt to hinder or defeat the payment of just claims. (5 Cal.Jur.2d § 3, p. 597.)''

True it is that the parties did not provide that the note was payable exclusively in Los Angeles County, California, and nowhere else. However, they did stipulate that the note would be payable ''wherever payment may be demanded by the holder hereof, within or without the state of Nevada.'' It appears to us that California is a place ''without the state of Nevada,'' that a proper demand was made in the state of California, and that an attachment should be granted.

Surely, the Legislature did not intend to provide that a contract had to be paid exclusively and only in this state before the creditor could have the benefit of the attachment laws of the state of California.

In *Tuller* v. *Arnold*, 93 Cal. 166, 168-169 [28 P. 863], the court said:

''The rule that this court will not pass upon the evidence when conflicting does not apply where the evidence is all documentary. It is true, this court will not interfere with the discretion of the trial court, except where it can plainly see that there has been an abuse of such discretion.

''But where, in a matter in reference to which this court has equal advantages with the lower court, it is beyond doubt that error has been committed to the prejudice of the appellant, it is the duty of the court to correct the error. Such error must be held to be an abuse of discretion. Every reversal goes upon this theory, and it should make no difference

whether the mistake be as to a conclusion from the evidence or in construing the law, provided it be made equally clear that error has occurred.''

The order appealed from is reversed with directions that the cause be remanded for further proceedings in keeping with the views expressed herein.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied November 13, 1956, and respondent's petition for a hearing by the Supreme Court was denied December 19, 1956.