[S. F. No. 5437. In Bank.—February 5, 1912.]

A. A. GNARINI, as Trustee of the Estate and Effects of Cain, Boyd & Corriea (a Corporation), Bankrupt, Appellant, v. SWISS AMERICAN BANK OF LOCARNO, Switzerland (a Corporation), Respondent.

MORTGAGE SECURITY HELD BY BANK—SECURITY MUST BE EXHAUSTED BEFORE RECOURSE TO DEPOSITS—MORTGAGE GIVEN BY THIRD PARTY. —Where a bank has mortgage security for a debt it must exhaust that security before it can apply in reduction or cancella-

tion of the debt any money on deposit with it belonging to the debtor. This rule applies where the mortgage was not given by the debtor himself but by a third party. In either case the debt is secured by mortgage, and under section 726 of the Code of Civil Procedure, the mortgage security must be exhausted by a foreclosure action before recourse can be had to the bank account or personal responsibility of the debtor. Nor can the mortgage be waived and an action brought on the indebtedness.

ID.—MORTGAGE SECURING ADVANCES TO PARTNERSHIP—RENEWAL NOTE GIVEN BY SUCCEEDING CORPORATION.—A mortgage to a bank given to secure the individual debt of a member of a partnership and also "the repayment of all other and further advances made or which may in the future be made by said mortgagee" to the partnership, operates to secure a note subsequently executed by the partnership to the bank for a loan made to it; and where such partnership is afterwards formed into a corporation having the same name as the original partnership, and composed exclusively of its members, the mortgage also secures a new note given by such corporation to the bank in renewal of the former note of the partnership, notwithstanding such former note is marked "Paid" by the bank when the renewal note was given. Under such circumstances, the bank could not apply money of the corporation on deposit with it to the payment of the new note, without first exhausting its mortgage security.

ID.—TAKING OF NOTE NOT PAYMENT OF PRE-EXISTING DEBT.—The taking of a note, either of the debtor or of a third person for a preexisting debt, is not payment, unless it is distinctly understood that the note is taken as such. The note only postpones the time of payment of the old debt until default is made in payment of the note.

ID.—EXONERATION OF SURETY.—CONSENT TO CHANGE OF FORM OF INDEBTEDNESS.—If the mortgagor be considered as a surety for the loan to the partnership he was not exonerated by the taking of the note of the corporation in renewal of the former note of the partnership, where such transaction was had with his consent.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

Charles A. Shurtleff, and Robert B. Gaylord, for Appellant.

E. B. Young, F. A. Denicke, H. S. Young, Metson, Drew & Mackenzie, and Horatio Alling, for Respondent.

THE COURT.—The justices of the district court of appeal for the first appellate district being unable to agree upon a decision in the above entitled cause, it was certified to this court for determination.

Justice Kerrigan of the court of appeals had prepared the following opinion, which, meeting and expressing, as it does, the views of this court, is hereby adopted as its opinion, and for the reasons therein stated the judgment and order appealed from are reversed.

"This is an appeal from a judgment in favor of the defendant and from an order denying plaintiff's motion for a new trial.

"On July 1, 1904, Cain, Boyd & Corriea, a corporation, was, upon petition of its creditors, declared and adjudged to be a bankrupt, and subsequently the plaintiff was duly elected trustee of said bankrupt. On June 10, 1904, the bankrupt had a considerable balance to its credit with the defendant bank, and the account was closed and balanced by the bank by charging to the account a note executed in its favor by Cain, Boyd & Corriea. The bankrupt was originally a copartnership doing business in this state under the firm name of Cain, Boyd & Corriea, but afterwards was incorporated, and conducted business under the same identical name, and was composed of the old firm members with the exception of two nominal holders of two shares of stock. The indebtedness to the bank arose in the following manner: On January 27, 1903, Cain, a member of the said firm, and his wife, to secure a personal loan to Cain, executed a mortgage in favor of the bank, which mortgage among other provisions recited that it was given to secure 'the repayment of all other and further advances made or which may in the future be made by said mortgagee . . . to the firm of Cain, Boyd & Corriea.' On February 2, 1903, the defendant bank loaned the firm of Cain, Boyd & Corriea the sum of $2,000, taking their note for this sum. After the firm was incorporated the note was marked 'Paid,' and surrendered by the bank to the corporation, and $100 having been paid on account thereof a new note dated June 4, 1904, was made in favor of the bank for $1,900. Both of these notes bore the same signature, i. e., Cain, Boyd & Corriea. Eleven days after the giving of this note, and immediately prior to the institution of the proceed-

ings in bankruptcy of the corporation, the bank applied the amount on deposit to the credit of the corporation to the payment of this note, which application still left due thereon a balance of $56.40, which Cain personally paid in cash three days later. The manager of the bank testified that it was in consideration of the mortgage security that any money at all was loaned to the firm. It is also to be observed that the bank has never made any release of the mortgage.

"The plaintiff contends that the indebtedness represented by the note was secured by this mortgage, and that therefore the bank had no right to charge this note to the deposit account. It seems to be conceded—as indeed it must be—that if the mortgage given by Cain and his wife still subsists, and is security for the indebtedness represented by the second note, the bank had no right to apply the deposit to its payment. This was squarely decided in the case of *McKean* v. *German Savings Bank*, 118 Cal. 334, 339, [50 Pac. 656], where it was held that if a bank has mortgage security for a debt it must exhaust that security before it can apply in reduction or cancellation of the debt any money on deposit with it belonging to the debtor.

"This is the doctrine, too, where the mortgage was not given by the debtor himself but by a third party (*Commercial Bank* v. *Kershner*, 120 Cal. 495, [52 Pac. 848]). In either case the debt is secured by mortgage, and as only one action may be maintained to enforce a debt thus secured, (Code Civ. Proc., sec. 726), it follows that the mortgage security must be exhausted before recourse can be had to the bank account or personal responsibility of the debtor. Nor can the mortgage be waived, and an action brought on the indebtedness (*Barbieri* v. *Ramelli*, 84 Cal. 154, [23 Pac. 1086]).

"These observations bring us to the first question in the case, namely, was the debt due the bank evidenced by the second note secured by the mortgage given by Cain and his wife?

"We think it was. It is a settled principle of law in this state and one often recognized that the taking of a note, either of the debtor or of a third person for a pre-existing debt, is not payment, unless it is distinctly understood that the note is taken as such. The note only postpones the time of payment of the old debt until default is made in payment of the

note. In *Griffith* v. *Grogan*, 12 Cal. 317, it was held that·
when a promissory note is received upon an antecedent debt
such debt is not extinguished thereby unless the new note
was, by express agreement, received in payment of the ante-
cedent debt; that it only operated to extend until the maturity
of the note the period of the payment of the debt.

"So in *Brown* v. *Olmsted*, 50 Cal. 162, 165, it was said:
'This court has repeatedly recognized the rule that an ex-
press agreement must be shown to establish the fact that a bill
or note of either the debtor or of a third person was taken by
the creditor in payment of a pre-existing debt.'

"In *Welch* v. *Allington*, 23 Cal. 322, Allington gave Welch a
note for the amount due him. Subsequently Allington, being
the holder of a non-negotiable promissory note executed by
one Smith, gave this note to Welch upon surrender of his note,
which was then destroyed. The Smith note was not paid upon
maturity, and Welch, learning that Smith had a set-off against
Allington, sued Allington on the original note. In that case
it was held that, inasmuch as there was no agreement that
the Smith note was to pay the debt, the action against Alling-
ton could be maintained; that the acceptance of the Smith
note only operated as an extension of the time of payment of
Allington's note until the maturity of Smith's note. The
court in that case said: 'There is no evidence in this case of
any express agreement that the new note was to be in payment
of the old one, or that the debt due on the old note was to be
extinguished by accepting the new one.' There the only
fact tending to show such express agreement was that the old
note was surrendered when the new one was received, and
this circumstance the court held to be insufficient to prove
such agreement. (See, also, *Tolman* v. *Smith*, 85 Cal. 287,
[24 Pac. 743].) 'Cancelling a note or bill or stamping it
"Paid" does not necessarily constitute or show payment.' (7
Cyc., 1007.) In the case at bar the first note was marked
'Paid' and surrendered, and while this might be regarded as
payment of that note, it certainly was not payment of the
original indebtedness.

"To digress for a moment, it must be observed that in the
case at bar the note we are now discussing—the second one
given to the bank—bore no corporate seal, and did not pur-
port to be signed by any officer of the corporation. Both

notes bore the same signature,—namely, 'Cain, Boyd & Cor-
riea.' The books of the bank and the method of keeping the
account underwent no change by reason of the incorporation.
This incorporation was had as a matter of convenience, and
no change took place in the business or in the personnel of
the proprietors. For these reasons it is claimed by the plain-
tiff that, so far as the bank is concerned, the firm and the cor-
poration should be regarded as one entity. But the necessities
of the case require no consideration of that point, and we may
return to the discussion where we dropped it a moment ago,
for even treating the firm and the corporation as two separate
and distinct entities, we have the corporation—a third party,
taking up the note of the maker, and giving in its place its
own note, without any understanding or agreement that the
latter was accepted in payment of the original indebtedness,
so that this case falls squarely within the rule laid down in
the cases just cited.

"The mortgage in this case in express terms was made to
secure the payment of an indebtedness and not of any particu-
lar note, and was still available for that purpose at the time
the defendant applied to the reduction of that indebtedness
the·amount standing on its books to the credit of the corpor-
ation, and the form by which that indebtedness was evidenced
was not important.

"This was held to be the law in *London & San Francisco
Bank* v. *Bandman,* 120 Cal. 220, 222, [65 Am. St. Rep. 179,
52 Pac. 583]. There two promissory notes evidenced an *in-
debtedness,* and as four years had elapsed after the maturity
of these notes it was contended on behalf of the mortgagor
that the lien of the mortgage had become extinguished, but
as the mortgage was given to secure a 'present indebtedness,'
and as those two notes had been replaced by a new note, it
was held that the statute of limitations not having run against
the new note, the indebtedness had been kept alive, and that
'as long as an action could be brought to recover the debt
the mortgage lien was nòt extinguished.' In that case the
court quoted from *Flower* v. *Elwood,* 66 Ill. 446, where it
is said: 'As a general rule the mere change in the form of
the debt does not satisfy a mortgage given to secure it, unless
it is intended to so operate. The lien of the debt attaches to
the mortgaged property, and the lien can, as between the

parties, only be destroyed by the payment or discharge of the debt or by a release of the mortgage. Mere change of the form of the evidence of the debt in no way affects the lien.'

"We pass to another point in the case. Uncontradicted evidence was given that $1500 of the $2,000 loan represented the amount that Cain had agreed to contribute to the capital of the firm, and to that extent he was in fact the principal; but ignoring this argument, and treating Cain as a surety as to the whole loan, still as the transaction was not altered in any respect without his consent he was not, as suggested by respondent, exonerated. A surety is exonerated when, without his consent, 'the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal in respect thereto are in any way impaired or suspended.' (Civ. Code, secs. 2819, 2844.) It is obvious that, knowing of the impending bankruptcy proceedings, and desiring to have his property freed from the mortgage lien, Cain was acting for himself and not for the corporation when he replaced the old note with a new one. The fact that he paid out of his own pocket the sum of $56.40 to balance the account with the bank demonstrates that the taking of the new note was not without his consent.

"Finally, the defendant was the bank with which the corporation transacted its banking business, and must have known of its embarrassed financial condition. The second note was taken only eleven days before the institution of the bankruptcy proceedings. These circumstances, together with the haste with which the bank account was offset by the note, lead us to believe that the bank, in applying the corporation's deposit to the payment of the note, knew that it was availing itself of a preference over other creditors of the corporation. Therefore, if it was necessary for a decision in the case, we would have no hesitation in holding that the bank's action constituted the obtaining of a preference, and having occurred within four months of the filing of the petition in bankruptcy, that it was void under the Bankruptcy Act. (Collier on Bankruptcy, p. 471.)"