[Civ. No. 1420.    Third Appellate District.—December 13, 1915.]

# B. F. LYNIP, Respondent, v. THE ALTURAS SCHOOL DISTRICT OF MODOC COUNTY et al., Appellants.

DISQUALIFICATION OF JUDGE—DISCLOSURE DURING TRIAL—TIMELY OBJECTION.—Where there is nothing on the face of the record in advance of the trial of an action to show that the judge was disqualified from trying the same, and such disqualification is first disclosed upon the cross-examination of the plaintiff, a motion thereupon made to change the place of trial is not too late.

ID.—ACTION BY BANKING CORPORATION — RELATIONSHIP OF JUDGE TO DIRECTOR—DISQUALIFICATION TO ACT.—A judge is disqualified from sitting or acting in an action in which a bank is the real party in interest, where his brother is a director of the bank, notwithstanding the fact that the action is brought in the name of a private individual.

ID.—CORPORATE CHARACTER OF BANK—TIME OF OBJECTION.—Where, in such a proceeding, it is intended to question the corporate character of the bank, such objection should be made at the time of the motion for change of place of trial, and when not so made the corporate character will be assumed.

ID.—STATUS OF DIRECTOR OF CORPORATION—OFFICER.—A director of a corporation is an officer within the meaning of subdivision 2 of section 170 of the Code of Civil Procedure, which provides that a judge is disqualified from sitting or acting in any action or proceedings where he is related to an officer of a corporation within the third degree, computed according to rules of law.

ID.—BUILDING CONTRACT—ABANDONMENT—ASSIGNMENT BY CONTRACTOR OF MONEY TO BECOME DUE—CONSTRUCTION OF INSTRUMENT.—An assignment by a contractor engaged in the construction of a school building of a specified sum of money "out of the twenty-five per cent of said contract price to be paid to me under said contract after the completion and acceptance of the building," operates solely upon the fund to become due and payable only upon the completion of the building, and not upon moneys becoming due and payable as the work progresses; and where the contractor abandons the contract before completion, the school trustees are not liable to the assignee for the amount of the assignment, under their indorsement on the contract recognizing the assignment and reciting an agreement to pay the sum named "out of the payment" to be made "at the time of completion and acceptance of said building."

ID.—GUARANTY OF PAYMENT TO ASSIGNEE—ABANDONMENT OF WORK—DISCHARGE OF GUARANTORS.—The execution by the school trustees, in addition to such indorsement, of a guaranty that the specified sum of money should be repaid to the assignee upon the completion

of the school building "out of the twenty-five per cent of the contract price of said building held back until the completion of said building," does not make them guarantors of the original obligation, and upon the abandonment of the contract by the contractor their liability became extinguished.

APPEAL from a judgment of the Superior Court of Modoc County.    Clarence A. Raker, Judge.

The facts are stated in the opinion of the court.

Cornish & Robnett, for Appellant School Trustees.

C. S. Baldwin, for Appellant School District.

Jamison & Wylie, for Respondent.

BURNETT, J.—There is little, if any, controversy as to the facts involved herein.    In the year 1911 one A. E. Pearson, as original contractor, was engaged in the construction of a grammar school building in the town of Alturas, Modoc County, under a written contract for the total price of $20,350.    Defendants Auble, Ballard, and Smith were the trustees of the school district.    On or about November 18th of said year said Pearson made application to the plaintiff, as cashier of the First National Bank of Alturas, for a loan of four thousand dollars, to enable said Pearson to pay for labor and materials for the construction of said building. Plaintiff, acting for said bank, loaned Pearson said sum and took an assignment to the extent thereof of the last or final payment which might become due said Pearson after the completion of said building.

On cross-examination plaintiff testified that this was not a personal transaction of his, that it was a "bank affair," and that he was prosecuting the action for the bank.    The record then shows the following: "Q. Who are the directors of your bank, that is, the First National Bank of Alturas?    A. A. W. Toreson, D. C. Berry, A. B. Etes, H. R. Gaustad, John E. Raker, Ulty McCabe, E. Van Loan, C. A. Estes, and myself. Q. You say that John E. Raker is a director?    A. Yes.    Q. Is that a brother of his Honor, Clarence A. Raker, who is presiding here?    A. Yes, sir.    Mr. Robnett: If your Honor please, it just now develops in this case that your Honor, under the code, will be disqualified to proceed, owing to the

fact that this action, although nominally brought in the name of B. F. Lynip, is in reality prosecuted by the First National Bank of Alturas, of which your brother, John E. Raker, is a director. I submit a motion at this time that your Honor is disqualified, and there should be a change of venue in this case. It did not appear on the face of the record before. Mr. Jamison: If your Honor please, I think it is out of the ordinary procedure. At this moment I am not prepared to take up and argue this matter. Usually, if any objection of this kind is made, it is made in the beginning, before the case has reached trial in any way, shape or form. Mr. Robnett: The record did not show on its face any disqualification. The other side had all the facts in their office and in their knowledge, and we had none of them. That is why the motion comes now. I simply submit the motion, and we are willing to proceed with the evidence and have the motion considered later. We make the motion now under our understanding of the law, and object to your Honor presiding at the trial. The Court: The motion is denied.''

Section 170 of the Code of Civil Procedure provides: ''No justice, judge, or justice of the peace shall sit or act as such in any action or proceeding. . . . 2. When he is related to either party, or to an officer of a corporation which is a party, . . . within the third degree, computed according to the rules of law.'' The section further provides that said disqualification may be waived in writing. That is the only method specified, and while, under certain circumstances, a party might be estopped to raise the question of disqualification, no such situation is presented here. Appellants made the objection as soon as they were apprised of the facts that seemed to bring the case within said inhibition of the statute. Upon no consideration of principle or authority do we think it should be held that the objection came too late or that appellants had waived the privilege. It will be noticed that the foregoing is the only objection made by respondent to the motion. Certain other considerations are suggested here, however, in attempted justification of the order denying said motion. One is that the bank is not a party to the suit. Nominally this is true, but said bank appears unquestionably to be the real party in interest. The statute should have, we think, no such narrow construction as is contended. Plaintiff could maintain the action only by virtue of section

369 of the Code of Civil Procedure—that is, as the trustee of an express trust, but the judgment rendered would affect particularly the interest of the bank for whose benefit the action was prosecuted, and that is the determinative factor. Neither can there be any doubt as to what bank was interested in the suit. The quotation already made leaves nothing to be desired as to this point.

The suggestion is made that it was not shown that the bank was a corporation. Such objection, if intended to be relied on, should have been made at the time. This would have been only fair to opposing counsel. Indeed, as we have seen, there was apparently no controversy as to the facts. It was assumed by all parties that the conditions existed that would make the rule applicable except that the application was made too late. But the point is made by appellants that it appears that it was a national bank, and since the law requires a national bank to be incorporated, we must assume that it was such corporation. If strict proof were required, we would probably not be justified in acting upon such assumption, but, under the peculiar circumstances here, we must hold that there was acquiescence in the existence of the facts implied in the statement of counsel for appellants.

The suggestion that a director is not an officer of the bank, urged strongly by respondent, is, we think, without any merit at all. An office in a corporation has been defined as "a position of trust or authority in the regular and continued employment of the corporation." The duties of a director are familiar and need not be detailed, and it may be said that his position is of the highest "trust and authority" in connection with the affairs of the corporation. His authority is not only paramount, but the other executive officers are subject to his will for their appointment and tenure.

The question does not seem to have been considered many times by the courts, but there is authority for the position of appellants. In *United States* v. *Means,* 42 Fed. 603, it was held that directors of a national bank are "officers" within the meaning of Revised Statutes of the United States, section 5209, [5 Fed. Stats. Ann., p. 145; U. S. Comp. Stats. 1913, sec. 9772], which makes it a misdemeanor for bank officers to make false entries in any book, report, or statement of the bank, with intent to deceive any of its officers, the court saying: "As to the directors there is not the shade of doubtful

29 Cal. App.—11

construction of this act. They are not only officers, but managers, of our national banks. They come within every sense and meaning of the word 'officer,' and are within the rule of the association of words in the act already referred to and of the decisions cited.''

''In Laws 1875, C. 611, sec. 21, providing that 'if any certificate or report made or public notice given by an officer of a corporation shall be false in any material representation, all the officers who have signed the same shall be jointly and severally liable for all the debts of the corporation contracted while they are officers thereof,' officers should be construed to include the directors of the corporation, for, in a strict sense, the directors of a corporation are its officers.'' (*Torbett* v. *Eaton,* 49 Hun, 209, [1 N. Y. Supp. 614]; *Brand* v. *Godwin,* 15 Daly, 456, [8 N. Y. Supp. 339, 9 N. Y. Supp. 743]; *Commonwealth* v. *Wyman,* 49 Mass. (8 Met.) 247.)

Our attention has not been called to any decision in this state directly in point but in the Civil Code, and in the case of *Sherwood* v. *Wallin,* 154 Cal. 735, [99 Pac. 191], it seems to be assumed that they are officers.

It appears to us so plain that we are not surprised that there has been little or no controversy concerning it.

Moreover, upon the merits, we think the decision was erroneous, judgment having been rendered for plaintiff after trial. The basis of the claim lies in an assignment made on November 18, 1911, by said Pearson as contractor aforesaid. The said assignment, after reciting the contract with said district and the advancement to said Pearson by B. F. Lynip of the sum of four thousand dollars to enable the former to pay for the material and labor on said building concludes as follows: ''Therefore, I hereby assign, convey and set over unto the said B. F. Lynip the sum of four thousand dollars, out of the twenty-five per cent of said contract price, to be paid to me under said contract after the completion and acceptance of said building as aforesaid, and hereby authorize the said board of trustees to pay said sum out of said twenty-five per cent to said B. F. Lynip instead of to me, and to accept his receipt therefor in all respects as though said receipt was signed by me, hereby authorizing the said B. F. Lynip to receive and receipt for said sum of four thousand dollars out of said twenty-five per cent of said contract price, in my place and stead.''

An assignment almost identical in form and between the same parties, involving the sum of $430, executed November 6, 1911, nearly two weeks prior to the one before us, was thoroughly considered by this court in the case of *Lynip* v. *Alturas School Dist.*, 24 Cal. App. 426, [141 Pac. 835].   We may refer to said decision for a declaration of the facts connected with and of the principle that must control in the interpretation of the assignment herein.   Therein it was held that the assignment operated "solely upon the fund to become due and payable only upon the completion of the building, not upon moneys becoming due and payable as the work progresses; and if the contractor abandons the contract before completion, the trustees are not liable to the assignee for the amount of the assignment, under their indorsement thereon recognizing the assignment and reciting an agreement to pay the sum named 'out of the payment' to be made 'at the time of completion and acceptance of said building.' "

There was in this case a similar indorsement made by the trustees, but there is this additional feature not found in the Lynip case, *supra:* Two days after said assignment was made it was again presented to the trustees of said district, and it then had attached to it a second page, containing the following guaranty: "We, the undersigned, in consideration of B. F. Lynip advancing to A. E. Pearson, the amount named in the assignment thereto attached, to-wit, the sum of four thousand dollars, for the purpose of paying for the labor performed, and the material furnished and used in the school building now being constructed by the said A. E. Pearson for the Alturas School District of Modoc County, California, do hereby guarantee that the said sum of $4,000.00 so advanced by the said B. F. Lynip to the said A. E. Pearson, as aforesaid, shall be repaid to the said B. F. Lynip upon the completion of the said school building, out of the 25 per cent of the contract price of said building, held back until the completion of said building."   On the same or the following day this was signed by two of the trustees, E. F. Auble and S. T. Ballard, and a day or two later by the other trustee, L. S. Smith.

It is by virtue of this guaranty that plaintiff sought to recover, contending that it was a guaranty of the original obligation—in other words, a guaranty that the debt would be paid.  If such had been the intention of the parties, how-

ever, how easy to have so provided. If such was their intention, they were very unfortunate in the use of terms. The only reasonable construction of the instrument, it seems to us, embodies the conclusion that the trustees would recognize Lynip as being entitled to the last payment rather than Pearson. This necessarily implied that there would be a last payment due. They guaranteed, in other words, that the money should be repaid to Lynip out of a certain fund, to wit: "the 25 per cent of the contract price of said building, held back until the completion of the building." There never was any such fund, since Pearson abandoned the contract and the contract price was exhausted in the completion of the building by the trustees. It is to be observed that the trustees did not guarantee that Pearson would complete the building or that the twenty-five per cent would be due him when the building was completed, but the guaranty was virtually that effect would be given to the assignment to which, it may be repeated, it was attached and to which it refers and of which it was made an inseparable part.

This assignment was not the original obligation of the trustees nor of Pearson, but was collateral as a form of security. The original obligation was in the form of a promissory note signed by Pearson alone, and to secure its payment he made the assignment and the defendants guaranteed that they would recognize its operation in the distribution of said twenty-five per cent fund.

It is true that this construction probably deprives said guaranty of any legal value. The trustees had already indorsed on said assignment their acceptance, and they were thereby obligated to pay said fund to Lynip, but whatever may be the effect of said guaranty, the guarantors have a right to stand upon its terms.

The fact is, apparently, that the trustees, as individuals, guaranteed that they, as trustees of the district, would recognize Pearson's assignment and pay the money to his assignee instead of to him. But there was no default on the part of the trustees. They were not called upon to pay the money since the obligation never matured. As far as the guaranty is concerned, the trustees as such were the principals and they as individuals were guarantors. There having been no default on the part of the principals, it would follow that the guarantors were exonerated from liability.

Several cases are cited by respondent in support of his contention, but it will be observed that therein the liability of the guarantors was not limited as in the case before us. *Bagley* v. *Cohen*, 121 Cal. 604, [53 Pac. 1117], may be taken as an example. The contract was: "On or before sixty days I, E. H. Gould, do hereby agree to pay to F. S. Bagley, or order, out of the profits realized by me from my business of packing raisins at Malaga, during the present season, the sum of three hundred and ten dollars in gold coin of the United States of America." Prior to the delivery of this contract, and as a part of the same transaction, the defendant subscribed the following guaranty, which was written beneath the contract: "I, E. A. Cohen, do hereby guarantee the payment of the foregoing note in accordance with the conditions thereof." Within ten days after the execution of the foregoing instrument Gould sold and conveyed all his right, title, and interest in and to his business of packing raisins at Malaga and thereby prevented himself from realizing any profits out of said business. It was properly said by the supreme court that: "The contract of the defendants being a part of the same transaction with the contract of Gould, the two instruments make but a single contract on their part. (*Hazeltine* v. *Larco*, 7 Cal. 32.) Their guaranty that Gould would perform his contract was an original undertaking by them, and their liability as guarantors is commensurate with that of Gould. (Civ. Code, sec. 2808.) Their promise that he would perform his contract 'in accordance with the conditions thereof' made them absolutely liable for his failure to perform it when he should be so liable. (*Otis* v. *Haseltine*, 27 Cal. 80.)" The defendants therein, as seen, guaranteed the performance of Gould's contract, and hence they were of course liable when he defaulted. The defendants here made no such guaranty of Pearson's performance, but guaranteed a payment in accordance with the terms of their contract with Pearson. The latter having defaulted, released them and also the guarantors.

We think the order and judgment should be reversed, and it is so ordered.

Chipman, P. J., and Hart, J., concurred.