[Civ. No. 3784. Second Appellate District, Division Two.—March 20, 1923.]

## In the Matter of LEWIS PINKERTON CRUTCHER, Jr., etc.

[1] ADOPTION — MINOR ORPHAN CHILD — CONSENT. — A minor orphan child may be legally adopted, even though he has not been maintained in an orphan asylum or charitable institution, and no consent to such adoption is necessary except that of the judge of the superior court to whom the application for adoption is presented.

APPEAL from an order of the Superior Court of Los Angeles County denying a petition for an order declaring a minor a ward of the Juvenile Court. Bertin A. Weyl, Judge. Affirmed.

The facts are stated in the opinion of the court.

Douglas L. Edmonds for Petitioners.

Tanner, Odell & Taft for Respondent.

CRAIG, J.—This is an appeal from an order of the juvenile department of the superior court of Los Angeles County denying the petition of appellant for an order declaring Lewis Pinkerton Crutcher, Jr., a ward of the juvenile court. Petitioner is the uncle of the minor and the respondents, James D. and Kate L. Campbell, are the parents of the child by adoption under a decree of the superior

court entered on the twenty-six day of June, 1914, upon which date the natural father and mother were both deceased. The mother died when Lewis Pinkerton Crutcher, Jr., was an infant, and the father's death occurred on the third day of June, 1914, up to which date the child had been cared for by the respondents. In enumerating those who are subject to the jurisdiction of the juvenile court, subdivision 2 of section 1 of the juvenile court law (Stats. 1915, p. 1225) includes "those who have no parent or guardian; or who have no parent or guardian willing to exercise or capable of exercising proper parental control; or who have no parent or guardian actually exercising such proper parental control and who is in need of such control." Therefore, this infant is one who may be regarded as a proper subject for juvenile court guardianship unless the existence of some other fact or condition prevents it.

The petitioner contends that the decree of adoption is void. If so, this proceeding falls within the jurisdiction of the juvenile court, as the child would then have no parent or guardian. But respondent invokes the doctrine of *res adjudicata,* based upon the entry of the decree of adoption and the following additional facts: On the 2d of July, 1914, Lewis Pinkerton Crutcher, Sr., the child's uncle and petitioner here, made a motion to vacate and annul the decree of adoption. This motion was later amended. Thereafter, on the fifth day of August, 1914, it was denied. A second motion to vacate the adoption was filed by Lewis Pinkerton Crutcher, Sr., which was also on August 20, 1920, denied. No appeal was ever taken from either of these orders.

On the first day of December, 1914, Lewis Pinkerton Crutcher, Sr., filed a petition in the juvenile court, which, after alleging, among other matters, the fact that James D. Campbell and Kate L. Campbell claimed the right to the care and custody of the infant under the adoption proceeding above mentioned and that the natural parents were deceased, prayed that the child be adjudged a ward of the juvenile court. This petition was, on January 6, 1915, denied and the proceeding dismissed, and no appeal was taken from said judgment and order.

[1] However, the question of *res adjudicata* is of little importance in determining this appeal, for we do not under-

stand respondent to seriously contend that it is applicable if the decree of adoption is held void upon its face, and appellant insists that it is utterly void in that he asserts that there is no provision in the law of this state for the adoption of a minor orphan child except one who has been maintained in an orphan asylum or charitable institution. This question is therefore squarely presented for our decision.

It is true that the proceeding to adopt a child was unknown to the common law. To give the court jurisdiction in such a matter compliance with all conditions required by the statute is necessary. This is decided in the *Matter of Cozza*, 163 Cal. 514 [Ann. Cas. 1914A, 214, 126 Pac. 161]. But section 221 of our Civil Code states that "Any minor child may be adopted by any adult person, in the cases and subject to the rules prescribed in this chapter." By section 224 of the Civil Code the consent of the parents is required as a condition essential to a valid adoption in certain cases, and expressly made unnecessary in others, by the following provisions: "A legitimate child cannot be adopted without the consent of its parents, if living; nor an illegitimate child without the consent of its mother, if living; except that consent is not necessary from a father or mother (1) deprived of civil rights or (2) adjudged guilty of (a) adultery or cruelty, and (b) for either cause divorce, or (3) adjudged to be habitually intemperate in the use of intoxicants, or who, (4) has been judicially deprived of the custody of the child on account of (a) cruelty or (b) neglect; (Abandoned Child) neither is the consent of anyone necessary in the case of an abandoned child; provided, however, that any such child, being a half orphan, and kept and maintained in any orphan asylum in this state for more than two years, may be adopted with the consent of the managers of such orphans' home without the consent of the parent unless such parent has paid toward the expenses of maintenance of such half orphan at least a reasonable sum during the said time, if able to do so. (Deserted child.) Any child (1) deserted by both parents, or (2) left in the care and custody of another by its parent or parents (a) without any agreement or provision for its support, (b) for a period of one year, is deemed to be an abandoned child within the meaning of this section, and where the parent is a

nonresident of this state such child may without the consent
of either parent be adopted with the consent of the managers
of such home whenever it has been left in such home for
more than one year." Surely, to hold that consent is neces-
sary to the adoption of a legitimate child whose parents
are not living, except in the instances specified in the code
section, would be adding a requirement not contained in it.

Except by inference section 224 of the Civil Code con-
cerns itself with the regulation of the adoption of the child
who, being legitimate, has one or both of its parents *in esse,*
or being illegitimate has its mother living. In such cases
consent is made necessary in some instances and dispensed
with in others. As far as its express provisions are con-
cerned, one parent must be living in order that the section
shall have any application. But by necessary implication
section 224 of the Civil Code includes and provides for
legitimate children whose parents are deceased. Can it be
doubted that by the phraseology of the first clause, "a
legitimate child cannot be adopted without the consent of
the parent, if living," it was the legislative intent to pro-
vide that no parental consent is necessary in the adoption
of a legitimate child whose parents are not living? It was
probably regarded as superfluous to expressly and solemnly
decree that when the parents are dead their consent to the
adoption of their offspring may be dispensed with. If we
give due regard to the subject matter of this legislation it
is apparent that by the provision last quoted the legislature
has said in effect "a legitimate child cannot be adopted
without the consent of the parents, except that where the
parents are not living such consent is unnecessary." Logic
compels the conclusion that by adding the words "if living"
to the inhibition contained in the preceding part of the
sentence, it was not intended to exclude legitimate orphans
from adoption, but rather to indicate that the bar to adop-
tion without consent should have no application in cases
where the parents are not living.

It is said that because the institution of adoption was not
found in the common law, nothing can be supplied by in-
ference. To apply this rule strictly would eliminate the
entire provision in question. It is only by way of implica-
tion that the section allows a legitimate child to be adopted,
even with the consent of its parents. The language does

not expressly state this may be done, and yet no one has questioned that the right is impliedly created by the statement that such adoption cannot occur without the parent's consent.

Appellant quotes the supreme court in *Ex parte Chambers,* 80 Cal. 216 [22 Pac. 138], as saying "the power to adopt minor children is a creation of the statute unknown to the common law, and the mode must be held to be the measure of the power." The same court in *In re Johnson,* 98 Cal. 531, 541 [21 L. R. A. 380, 33 Pac. 460, 463], referring to this quotation from *Ex parte Chambers,* said: "The court simply meant by this expression that the statute having made the consent of certain parties necessary, there could be no valid adoption without such consent." The opinion in the Johnson proceeding also holds that the law regulating adoption "is to receive a sensible construction, and its intent is to be ascertained not from the literal meaning of any particular word or single section, but from a construction of the entire scope, spirit and purpose of the statute." And the rule which requires compliance with all conditions of an enactment, novel in so far as the common law is concerned, does not compel a court to cripple the free functioning of a legislative plan, however new, by applying a strained or technical interpretation. No more strict or different rule of construction can be required in such cases than is established for the construction of a provision of the code in derogation of the common law, namely, a liberal interpretation with a view to effect its objects and promote justice. (Sec. 4, Civ. Code.)

If we are allowed to infer that the negative provision that "a legitimate child cannot be adopted without the consent of the parents if living" means that a legitimate child may be adopted with the consent of such parents, although the section does not expressly so state, it is equally permissible to recognize and give effect to the intent, clearly implied, that if the parents are not living, except in those cases otherwise classified in section 224, the adoption may proceed without parental or other consent, except that of the judge of the superior court. It is pertinent to observe here that the adoption of infants by proper adults willing to confer a home, parental care, and the right of inheritance upon an orphan in need of these advantages is a beneficent

provision of the law and one obviously in the interest of public good (*Estate of McKeag*, 141 Cal. 403 [99 Am. St. Rep. 80, 74 Pac. 1039]), and further, that the law has fully secured the infant, whose parents are deceased, against such tragedies as those suggested by petitioner, for example, a nurse having possession of a child for a few days fraudulently conniving with someone who might adopt him without the knowledge of his parents. Section 226 of the Civil Code makes the approval of the judge of the superior court essential to an adoption. It is not strange that this important responsibility should have been committed to such an officer, nor can we consider this safeguard inadequate for the protection of infants against improper adoption, for the common law has always reposed confidence and trust in the hands of judicial officers as in those of no other class of citizens. It may be further suggested that as against such a fraudulent adoption as that supposed, if a superior court judge should be so imposed upon as to permit it, our law affords ample remedy by appropriate proceedings.

The intent of the legislative mind which enacted this law may be substantially aided by noting the mode of expression employed in other provisions contained in it. Indeed, we need not look beyond this particular section of the code for a striking illustration of a similar provision, whose wording necessitates an interpretation through the same mode of reasoning which we are confident should be applied to the provision being construed in the instant case. We have here another example of enactment by inferential expression. In dealing with the subject of abandoned half-orphan children, section 224 above quoted contains this language: ''provided, however, that any such child, being a half-orphan, and kept and maintained in any orphan asylum in this state for more than two years, may be adopted with the consent of the managers of such orphans' home without the consent of the parent unless such parent has paid toward the expenses of maintenance of such orphan at least a reasonable sum during the said time, if able to do so.'' By the use of the closing qualification, ''if able to do so,'' it is inferentially provided that if the parent is unable to pay for any part of the support of ''such half-orphan,'' even if kept and maintained in an orphan asylum

for more than two years, and although the parent has in
fact paid nothing to the asylum, the infant cannot be
adopted without the parent's consent, and the consent of
the manager of the asylum is insufficient and ineffectual to
confer jurisdiction upon the court to permit an adoption.

It seems clear that the provision requiring the parent's
consent as an essential condition to adoption contains an ex-
ception, excluding the necessity for such consent unless the
parents are living. *Ex parte Chambers,* cited by petitioner,
involved the construction of another part of the law con-
cerning adoption. The court in that case held that the act
of 1878, enacted to authorize managers of orphan asylums
to give their consent to the adoption of certain children
under their care, provides for the adoption of a distinct
class of minors, to wit, abandoned and orphan children in
orphan asylums. The infant in whose behalf a writ of
*habeas corpus* was granted had been in the custody of the
Protestant Orphan Asylum for more than one year, and
it was held that the child was therefore within the class
established by the act of 1878.

Nothing more is involved in the instant proceeding than
a construction of the language of sections 221 and 224 of
the Civil Code, and we are convinced that through their
provisions jurisdiction existed in the court which entered
the decree of adoption of Lewis Pinkerton Crutcher, Jr., on
June 26, 1914; hence, the juvenile court properly denied
the petition for an order declaring him its ward.

The order is affirmed.

Finlayson, P. J., and Works, J., concurred.