[L. A. No. 15359. In Bank.—May 27, 1937.]

ESTHER A. WALTERS, Respondent, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Appellant.

Louis Ferrari, Edmund G. Nelson, G. L. Berrey, O'Melveny, Tuller & Myers, Louis W. Myers, Pierce Works, Jackson W. Chance and Ray H. Lindman for Appellant.

Morrison, Hohfeld, Foerster, Shuman & Clark, as *Amici Curiae* on Behalf of Appellant.

Archie A. Smith and Manley C. Davidson for Respondent.

Hugh Macbeth, Harry Goldman, George W. Tuttle, Jack P. Leonard, John C. Campbell and Marion P. Betty, as *Amici Curiae* on Behalf of Respondent.

THE COURT.—The plaintiff sued the defendant bank as garnishee to recover from it the amount of an alleged deposit which was claimed by her to have been attached in an action brought by her against the Republic Securities Corporation, and in which she recovered judgment in an amount greater than the amount of the attached deposit. Upon execution being returned unsatisfied in her action against the corporation, this action was commenced against the bank. The

cause was tried before a jury. After all the evidence was in, the trial court directed a verdict for the plaintiff. From the judgment based thereon the defendant has appealed.

 The trial court, in a proper case, may direct a verdict in favor of a party upon whom rests the burden of proof, in this case the plaintiff. Substantially the same rules apply to directed verdicts in favor of plaintiffs as apply to such verdicts in favor of defendants. (*Bias* v. *Reed,* 169 Cal. 33 [145·Pac. 516] ; 24 Cal. Jur., p. 913, sec. 163.) A directed verdict may be granted, when, disregarding conflicting evidence, and indulging every legitimate inference which may be drawn from the evidence in favor of the party against whom the verdict is directed, it can be said that there is no evidence of sufficient substantiality to support a verdict in favor of such party, if such a verdict has been rendered. (*Estate of Flood,* 217 Cal. 763 [21 Pac. (2d) 579] ; *Parker* v. *James Granger, Inc.,* 4 Cal. (2d) 668 [52 Pac. (2d) 226].) In passing on the propriety of the trial court's action in directing a verdict, the doctrine of scintilla of evidence has been rejected in this state. (*Estate of Baldwin,* 162 Cal. 471 [123 Pac. 267].) A motion for a directed verdict may be granted upon the motion of the plaintiff, where, upon the whole evidence, the cause of action alleged in the complaint is supported, and no substantial support is given to the defense alleged by the defendant. (*Kohn* v. *National Film Corp.,* 60 Cal. App. 112 [212 Pac. 207] ; 24 Cal. Jur., p. 915, sec. 163.)

The evidence is undisputed that in the action brought by the plaintiff against the Republic Securities Corporation, a writ of attachment was served on the defendant herein on May 10, 1930, by a deputy sheriff, by delivery to and leaving with R. C. Elliott, the assistant cashier of the bank, a copy of the writ, together with proper notice. The evidence is undisputed that at the time of the levy the Republic Securities Corporation had a balance in its commercial account on deposit with the branch bank of the defendant at which Elliott was employed and served, in the sum of $8,086.16. It is also undisputed that at the time of the levy the bank was the holder and owner of the secured note of the Republic Securities Corporation, on which, at the date the attachment was served, there was a sum due in excess of $50,000. The evidence is without conflict that this note was secured by a

pledge of certificates of corporate stock and promissory notes, and by three grant deeds of real property.

At the time of the service of the writ, the defendant made the following notation on the account of the Republic Securities Corporation: "Hold all. A/c attached. 5/10/30." Subsequently and on May 15, 1930, a return and answer stating "Defendant indebted to the bank" was delivered to the sheriff. It also appears from uncontradicted evidence that on the day the writ was served, Mr. Brown, vice-president of the bank and the manager of the branch where the attached account was on deposit, called Mr. Wright, the president of the Republic Securities Corporation, to the bank, informed him of the attachment and stated that it would be necessary to debit the depositor's balance with the amount then to its credit and apply the same on the note. Wright informed Brown that there were outstanding checks issued against the deposit. Brown agreed to take care of and to pay those checks and informed Wright "that the amount so transferred to the note would be immediately recredited" to the corporation's account. On May 11, 1930, an entry was made on the $50,000 note held by the bank to show a payment thereon of $8,086.16. The bank then permitted the Republic Securities Corporation to draw on its account, and it paid a number of outstanding checks drawn on the account. On May 27, 1930, it credited the account of the Republic Securities Corporation with the sum of $8,086.16, although no deposit in that or any other sum had in fact been made, and on the same day a notation was made on the $50,000 note showing a debit of $8,086.16. The plaintiff herein secured a judgment of over $9,000 against the Republic Securities Corporation. Upon execution being returned unsatisfied, and the attachment not having been discharged, she brought the present action against the bank for the amount which the Republic Securities Corporation had on deposit with the bank on May 10, 1930. At the conclusion of the trial the court, as above indicated, granted the plaintiff's motion for a directed verdict.

On this appeal the defendant urges two major contentions: (1) that the attachment was not properly served on the bank as required by section 542 of the Code of Civil Procedure; and (2) that even if the writ was properly served, there was nothing to attach on May 10, 1930, for the reason that on that

date the depositor owed the bank an amount in excess of the deposit.

The first contention of the defendant is that the levy of the writ was improper for the reason that it was served upon R. C. Elliott, an assistant cashier of the bank, who, so it is claimed, was not "the manager or any other officer of such banking corporation" within the meaning of subparagraph 6 of section 542 of the Code of Civil Procedure as it read in 1930. The answer to this question depends first upon the proper interpretation of the code section; and, second, upon ascertaining whether the evidence, in the light of the rules applicable to directed verdicts, conclusively indicates that the writ was served upon a person coming within the section.

Before 1927 there was no distinction made by the statute designating the proper persons to be served, between garnishment process served on ordinary corporations and such process served on banks. In that year section 542 of the Code of Civil Procedure was materially amended by adding a new subdivision thereto numbered 6 dealing, in part, with service on banks. As then amended (and as the statute read in 1930), that subdivision provided "that debts owing to the defendant by a banking corporation . . . maintaining branch offices . . . must be attached by leaving a copy of the writ and the notice with the manager or other officer of such banking corporation . . . at the office or any branch thereof at which the account evidencing such indebtedness of the defendant is carried . . . " The subdivision distinguishes between service on ordinary corporations and service on branch banks in two respects: (1) as to the persons served; and (2) as to the place of service. It is admitted as to the place of service that the service here involved was properly made. As to the persons served, the subdivision requires service in the case of ordinary corporations to be made on the "president of the corporation, vice-president, secretary, assistant secretary, cashier, or managing agent thereof", while in the case of branch banks it is to be made upon "the manager or any other officer of such banking corporation . . . " The amendments relating to branch banks were undoubtedly adopted because of the growth in branch banking in this state. Since the purpose of designating the persons upon whom service of process must be made is reasonably to assure the corporation of notice of the attachment, the legislature undoubtedly real-

ized that in cases of banks possessing many branches (as does the defendant), service upon the persons designated for corporations generally would not give notice to the branch where the account attached was located. For that reason the statute was amended and persons designated—the manager or any other officer—whom the legislature believed would be present at branch banks, and, if served, would reasonably apprise the bank that the account had been attached. Appellant contends that the expressions ''the manager'' and ''any other officer'' must be interpreted to mean the person designated as manager, and officers in the strict sense, that is, those appointed by the directors and whose position is provided for in the by-laws. Of course, such officers would normally not be present at every branch bank. To limit the operation of the section as contended for by the defendant would be to put it in the power of banks to render it inoperative. If the bank did not designate a person as manager, or did not designate an ''officer of such banking corporation'' to be present at a branch bank, attachment process could never be served upon such branch bank. ■ We are well aware of the rule that garnishment statutes must be strictly construed, but it is also a rule of statutory construction that all statutes must be reasonably and fairly interpreted so as to give them an efficient operation, and so as to give effect, if possible, to the expressed intent of the legislature. A statute should never be construed so strictly as to render it absurd or nugatory. (*In re Crutcher*, 61 Cal. App. 481 [215 Pac. 101]; *Primm* v. *Superior Court*, 3 Cal. App. 208 [84 Pac. 786]; 23 Cal. Jur., p. 799, sec. 176, and cases cited.) ■ It seems clear to us that the phrase ''any other officer'' was intended to mean a representative of the corporation of such character and rank that service upon such person would reasonably apprise the bank of the attachment—in other words, that the word ''officer'' was intended to have its ordinary and usual meaning, viz., an employee invested with a part of the executive authority and who has a position of trust or authority in the regular and continued employment of the corporation. (*Lynip* v. *Alturas School Dist.*, 29 Cal. App. 158 [155 Pac. 109]; *United States* v. *Pan American Pet. Co.*, 6 Fed. (2d) 43.) We think that properly construed the words ''or any other officer'' immediately succeeding the term ''manager'' in section 542 of the Code of Civil Pro-

cedure, must be held to mean any other representative of the banking corporation whose duties, functions, and responsibilities are such that service upon him would reasonably inform the bank of such service. Applying the language of the statute as interpreted to the facts as disclosed by the record there can be no doubt that R. C. Elliott was of the required rank. He was admittedly the assistant cashier. He testified that regardless of who in the bank accepted service of a writ, he was the one designated by the bank to whom the process would automatically come in order to see that the proper notice of such attachment was carried through the bank; that although not officially designated as chief clerk, he performed some of the duties of that officer; that when a writ of attachment was served upon him he "made a search of the records of the bank to see if we had anything to be attached", and would "start the attachment on its way and it would automatically cover all departments". Marco Hellman, vice-president and chairman of the executive committee of the bank in 1930, testified that Elliott's appointment as assistant cashier was confirmed by the board of directors of the bank; that in connection with Elliott's duties, process servers were usually sent "to Mr. Elliott to have the papers served"; that it was Elliott's duty to see that the attachment "got to the proper departments that were affected by the writ". It is admitted that Elliott performed his duty in this case and caused the Republic Securities Corporation's account to be marked "attached". This is substantially all of the evidence in the record on the status, duties, and powers of Elliott in 1930. Both the above-named witnesses were called by the plaintiff. The defendants offered no evidence at all on this issue. But one conclusion can reasonably be drawn from that evidence, and that is that Elliott was a representative of the bank of such rank, and clothed with such responsibilities as to come within the designation of "any other officer" contained in subdivision 6 of section 542 of the Code of Civil Procedure. In view of this conclusion we do not find it necessary to pass on the plaintiff's further contention that under the facts the bank is estopped to question Elliott's authority.

In the discussion of the defendant's point that on the date of the levy of the garnishment there was nothing to attach because of the $50,000 debt owing by the depositor to the

bank, counsel and *amici curiae* present their views as to the effect of the 1927 amendment of section 438 of the Code of Civil Procedure providing that "the right to maintain a counterclaim shall not be affected by the fact that either plaintiff's or defendant's claim is secured by mortgage or otherwise, nor by the fact that the action is brought, or the counterclaim maintained, for the foreclosure of such security. The respondent contends that the language of the amendment did not change the law announced in *McKean* v. *German American Sav. Bank,* 118 Cal. 334 [50 Pac. 656], and *Gnarini* v. *Swiss American Bank,* 162 Cal. 181 [121 Pac. 726], to the effect that a debt secured by mortgage could not be the subject of a counterclaim, except to permit an action of foreclosure to be filed as a counterclaim. The defendant contends that the amended section, read in connection with section 440 of the Code of Civil Procedure, permits in the present case an offset of the one debt against the other without first exhausting the security. The state of the record on the question next to be discussed and which was more particularly stressed and relied upon by the plaintiff as qualifying the rights of the garnishee in this case, renders it unnecessary to pass upon the contentions of the parties as to the effect of the 1927 amendment to said section 438. For the purpose of the discussion to follow we may assume that the bank had a right on May 10, 1930, to offset the promissory note for $50,000 *pro tanto* against the depositor's balance even though the note was secured and without first exhausting the security.

■ The question referred to concerns the effect to be attached to the conduct of the bank in crediting the amount of the deposit on the note and immediately thereafter re-crediting the depositor's account with the same amount and debiting the previous credit on the note. It is undisputed that subsequent to the service of the garnishment process upon the bank, and without the deposit of any further sum by the Republic Securities Corporation, the bank honored the checks of said corporation up to the full amount of the deposit. It is contended by the defendant that the relations and transactions between the garnishee bank and the depositor subsequent to the levy of the garnishment are immaterial, if at the date of the levy it can be shown that by reason of the offset of the depositor's debt to the bank there is nothing owing by the bank to the depositor. Upon further consideration of this

question we do not conceive this to be a correct application of the law to the undisputed facts here presented. In the case of *Nordstrom* v. *Corona City Water Co.,* 155 Cal. 206 [100 Pac. 242, 132 Am. St. Rep. 81], it was determined that the levy of the garnishment process created a lien upon any credits or personal property in the possession of the garnishee belonging to the judgment debtor. The court there stated, as its grounds for rejecting the view that in order to create any liability of the garnishee the latter must be compelled to deposit any such property with the sheriff or be permitted to stand upon its denial, that otherwise the creditor would be subject to be defeated in his efforts to collect the debt by unwarranted action on the part of the judgment debtor and the garnishee, or by the act of either of them. Apt illustrations of the application of the announcement then made that the statute was designed to safeguard the rights of the attaching creditor are afforded by numerous decisions. (*Obergfell* v. *Booth,* 218 Ill. App. 492; *Hudson* v. *Hudson Mator Co.,* 238 Ill. App. 391; *Burke, for Use of Birney,* v. *Congress Hotel Co.,* 280 Ill. App. 493; *Prudential Loan & Trust Co.* v. *Metzler,* 66 Or. 224 [133 Pac. 1191]; *First Nat. Bank of Brantley* v. *Standard Chemical Co.,* 226 Ala. 509 [147 So. 682]; *Brondum* v. *Rosenblum,* 151 Miss. 91 [117 So. 363]; *Trottier* v. *Foley,* 42 R. I. 422 [108 Atl. 498].)

The foregoing cases recognize and apply the principle that where the garnishee claims a debt due from the debtor as an offset, it must in fact apply such debt on the amount due from it to the debtor. If, instead, it pay the amount to the debtor such payment will be deemed an admission that there was no debt due and its claim of offset will be denied.

In the case of *Obergfell* v. *Booth, supra,* a garnishment was served on the appellant Central Trust Company of Illinois directed to any credits held by it for the account of the defendant Booth. Indebtedness of the bank to Booth in the sum of $335.93 was admitted. The garnishee bank alleged an indebtedess of Booth to it in the sum of $1,000 on a promissory note, and claimed the offset on the ground that there was nothing due at the date of the levy of the garnishment. Nevertheless, subsequently the bank accepted the renewal note of the depositor for the sum of $1,000 without in fact crediting the amount of the deposit on said indebtedness. It was held that any right which the garnishee may have had

to apply the deposit to the payment of the note was lost when it took the renewal note. The court stated: "While the garnishee, under the provisions of the statute, has the right, upon being notified of garnishment proceedings, to adjust any demands it may have against the judgment debtor, it cannot enter into any new agreements with the debtor involving money or property which it holds to secure the debt, which agreements may operate to the detriment of the attaching creditor . . . Inasmuch as the garnishee chose to enter into this new arrangement with the judgment debtor, after it had been served with process in this case and had filed its answer as above set forth and had thus postponed its use or right to use the collateral [deposit] in bringing about the payment of the indebtedness, and continued to hold such collateral, we are of the opinion that the trial court did not err in entering judgment against the garnishee for the amount of the deposit." In other words, inasmuch as the amount of the deposit was not actually applied in payment of the debt, but was continued to be held by the bank as the property and for the benefit of the debtor, it must be considered to have been held likewise for the benefit of the attaching creditor.

In applying the same principle in *Brondum* v. *Rosenblum*, *supra*, it was said that although the garnishee claimed and would have the right to set off any debt due him by the judgment debtor "it must be actually applied to garnishee's debt; and if not applied, but is paid to the debtor, such payment would be at the peril of garnishee."

The reason for the denial of the right of set-off under such circumstances, even though in the particular case the indebtedness of the judgment debtor to the garnishee exists as an actual indebtedness and not a mere subterfuge, is stated concisely in *First Nat. Bank of Brantley* v. *Standard Chemical Co.*, *supra:* "On good reason it is held that if the garnishee holds a demand against the defendant at the time of service of garnishment, but, nevertheless, disregards same and pays the salary pending the garnishment as though he held no set-off, he cannot set it up against the plaintiff in garnishment. Otherwise, the demand is not made a shield of protection to the garnishee, but a weapon for the protection of the debtor against the subjection of his assets to the payment of his debts."

The case of *Prudential Loan & Trust Co.* v. *Metzler, supra,* likewise involved the right of set-off of a garnishee bank of a debt due from its depositor. We find the following stated: "The bank had the right to apply the funds in its hands at the time of the garnishment, belonging to Metzler, to the payment of a debt due from the latter to it. . . . But it had no right to pay such funds to the order of Metzler during the garnishment proceedings and such payment was at the risk of the Bank . . . As between the attaching creditor and the judgment debtor the garnishee should occupy a disinterested position, and hold the money or property garnished until the matter is adjudicated or the attachment is discharged. (Citing authorities.) The bank waived the privilege of applying the funds upon Metzler's notes by paying him the same during the pendency of the garnishment proceedings. By so doing it clearly indicated that there was no intention on its part to do so. . . . "

To allow the garnishee to claim his right of set-off to defeat the claim of the creditor, and then to permit him to pay the fund in controversy to the defendant, would result in an unwarranted interference with the rights of other creditors of the defendant. (*Trottier* v. *Foley, supra.*)

We conclude that the foregoing cases state the rule that should control the pertinent facts in the present case. This result does not disturb the rule that garnishment proceedings reach only a debt then owing by the garnishee to the judgment debtor. It merely protects the rights of the attaching creditor against any property in the possession of the garnishee. If the garnishee's subsequent conduct be inconsistent with its formal denial that it is possessed of credits belonging to the judgment debtor, and here it is indisputably so, the result is merely that it is held liable in accordance with such conduct. Its liability as a garnishee is clearly defined, and the rights of the attaching creditor may not be defeated by its arbitrary refusal to conform to its duties and obligations as such. Its liability is not determined by an agreement between itself and the judgment debtor as to the application of the fund, but by the law which defines its liability as such garnishee.

The foregoing disposes of the main contentions. The further contention is advanced that the evidence supports a conclusion that the funds were in fact the property of

the Sparr Realty Corporation and that the Republic Securities Corporation in depositing the moneys in the defendant bank in its own name was in fact but the fiduciary agent of the Sparr corporation. The facts are not sufficient to support the contention. Furthermore, the Sparr corporation has made no claim to the fund either in the attachment proceeding or in this action.

The trial court allowed interest from May 10, 1930, the date of the attachment. The respondent's right to interest did not accrue until July 14, 1930, the date of the judgment. The judgment should be modified to correct that error.

The judgment is modified by striking therefrom the provision awarding to the plaintiff interest from May 10, 1930, and by substituting the date July 14, 1930, and as so modified the judgment is affirmed, the respondent to recover costs on appeal.

Rehearing denied.